## THE STATE OF KANSAS v. HENRY HEROLD.

1. "PERSON," IN CH. 113, GEN. STAT., *includes the United States.* The United States is a "person" within the meaning of § 1 of the "act to prevent certain trespasses," which makes it an offense for any person to cut down, injure or destroy, or take or remove any tree, timber, rails or wood, "standing, being or growing on the land of *any other person*," etc.

2. PRACTICE; *Record; Presumption.* Where a party brings a case to the supreme court and fails to bring any of the evidence that was introduced on the trial below, it must be presumed that the evidence was all against him and that it sufficiently proved all the material facts found against him.

3. ———*Instructions.* Where the evidence is all one way, and unquestionably proves the fact for which it was introduced, the court may tell the jury that the fact is proved, and instruct them to find accordingly.

4. EVIDENCE; *Title.* Where according to a public treaty the United States on the 14th day of October 1868 became the exclusive owner of a certain tract of land known as the Sac and Fox Diminished Reservation, proof that a certain smaller tract of land is a part of this reservation is some proof that the government owned the land at a time when a certain trespass was committed thereon.

*Appeal from Osage District Court.*

COMPLAINT in writing, and on oath, was made before a justice of the peace by Geo. Herold, alleging that W. M. Stand-

ford and *Henry Herold*, "on or about the 15th of November 1870, at the county of Osage, did trespass on the N.E.¼ of sec. 3, township 17 south, range 16 east, by cutting down trees and making rails, and carrying said rails away, being on land not their own, and that the parties charged have no interest or right therein." The parties were arrested, tried and convicted, and appealed to the district court. The county attorney dismissed the action as against Standford. An amended complaint was filed against *Herold*, and the case against him was tried at the October Term 1871. In the amended complaint the ownership of the land was alleged to be in the United States, and that said land was a part of the Sac and Fox Diminished Reservation. Verdict of guilty. New trial refused, and judgment that defendant pay a fine of ten dollars and costs. *Herold* brings the case here by appeal. The record contains the instructions of the court, but no part of the evidence. The character and ownership of the land, as shown by the instructions, and the nature of certain testimony admitted on the part of the prosecution, are stated in the opinion.

*James Rogers*, for appellant:

1. The court charged the jury in effect "that if the defendant within the proper time and place carried away rails off another man's land then they should find the defendant guilty."

The defendant insists that such an act would not necessarily constitute a public offense. Such a definition of an offense against the public would violate every principle of right and justice. Suppose the rails mentioned had been the property of the defendant? suppose he had authority from the owner thereof to remove them? suppose he had purchased them of the reservees, and was moving them off the reservation? all of which he might lawfully do, and still be liable to conviction, under the charge of the court. It is plain that the legislature intended more should be proved than what the mere language of the statute expresses. A complaint in the

language of the statute would certainly not be sufficient in a civil action at common law, nor under the code. Should it be less definite in a criminal charge?

2. The court in effect also charged that the Sac and Fox Reservation is a person within the meaning of the statute, or as afterwards charged, that the United States is a person within the meaning of the statute. Section 314 of the crimes act, (ch. 31,) only defines the term person within the meaning of that act, and can have no application to any other offense than those therein described. Section 321 of the criminal code, and subdivision 13, of § 1, ch. 104, Gen. Stat., provide that the word person *may*, not *shall*, mean a body politic. If it did mean a body politic as under this act (ch. 113, Gen. Stat.,) when enacted in 1855, (ch. 160,) and re-enacted in 1859, (ch. 208, Comp. Laws,) then it included the Territory and State of Kansas, as well as the United States. But the legislature did not so understand in 1861 when they passed the act (ch. 207, Comp. Laws,) to prevent trespasses on school lands. If the term has come to mean more than formerly, when did the change take place? That this act never was intended to protect the property of the United States we may infer from several reasons: First, an act that would punish persons with treble damages, and a fine and imprisonment, for *cutting grass* on government land, where millions of acres are made of no use whatever except as, fuel for the prairie fires, would seem to be ridiculous. Second, the government of the United States has the authority to, and has passed ample laws for the protection of its own territory. Brightley's Dig., 77, § 9. Third, the United States has a remedy at common law for trespass committed against its property. Fourth, the term "person" in its usual acceptation would have no reference to the United States. Fifth, the legislature of 1861 must have understood this act as having no reference to public property.

3. Another error is the declaration made by the court that for two years prior to the committing of the alleged offense the courts of the state had jurisdiction of this kind of offenses

on the Sac and Fox diminished reservation.    It seems to us that § 1 of the Act of Admission takes the reservation out of the State of Kansas, and prevents the state from interfering with the United States in making any regulation respecting these lands.    Could this state punish a member of the Sac and Fox tribe for trespass on the reservation?    Could the United States government, or the Sac and Fox nation, bring a civil action under this statute for trespass on this reservation?

4. It was error in the court to instruct the jury that if they found the alleged trespass to have been committed on the Sac and Fox reservation, then it was a trespass on the lands of the United States.    That this was not true we find by the terms of the treaty made with the Sac and Foxes, February, 1867, and ratified by the senate with amendments July 25th 1868; see 16 U. S. Stat. at Large, 495, by which allotments were made to reservees.    The defendant contends that as a legal principle the Sac and Fox diminished reservation is not the property of the United States to that extent that it could maintain a civil action for damages.    Chief Justice Marshall said, in the case of *Cherokee Nation v. The State of Georgia,* 5 Peters, 16, "Though the Indians are acknowledged to have an unquestionable and heretofore unquestioned right to the lands they occupy until that right shall be extinguished by a voluntary cession to our government," "they occupy a territory to which we assert a title independent of their will which must take effect in point of possession *when their right of possession* ceases."    Now by the terms of the treaty of 1867, as amended, the Indians had not as yet surrendered their possession to the United States at the time of the alleged trespass, but were in full possession as they ever had been except to that portion alloted to reservees or others.

*Ellis Lewis,* for The State:

1. The information or complaint follows almost literally the language of the statute, which is sufficient as to statutory offenses; Wharton's Am. Cr. Law, §§ 364 to 370; and our

statute does not require the statute to be literally followed: § 108, crim. code, Gen. Stat., 838.

2. The court did *not* charge "That the Sac & Fox Reservation was a person, within the meaning of the statute." The theory of the instruction is, that the lands of the Sac & Fox Reservation belong to the United States, and that the United States is a "person" within the meaning of subdivision 13, § 1 of ch. 104, and § 321, ch. 82 of General Statutes of 1868. That the U. S. own and have the title to the land of· all Indian Reservations, though the Indians have the right of possession is well settled: *Brown v. Belmard*, 3 Kas., 41. If this is correct, then the *ownership* was properly averred to be in the United States. Said ch. 113 is but the re-enactment of the territorial act of the same title, approved February 10, 1859: Comp. Laws, 896. This act took effect June 1st 1859, as also did "an act concerning the construction of statutes:" Comp. Laws, 839. Subdivision 13 of § 1 of the last-mentioned act reads: "The word *person* may be extended to bodies politic and corporate." So that ever since the treble-damage trespass act has been in force, the word "person" has meant the same as now.

The fact that the U. S. government has authority, and has passed laws for the protection of its own property, would not prevent the State of Kansas from protecting it too. The U. S. has not *exclusive* jurisdiction over lands lying in this state merely because it owns the land.

The opinion of the court was delivered by

VALENTINE, J.: This was a prosecution for a criminal offense—a misdemeanor—under ch. 113, Gen. Stat., 1095, for cutting down and carrying away timber from land belonging to the United States. The action· was commenced and tried before a justice of the peace, thence appealed to the district court, there again tried, and thence appealed to this court.

There is no complaint to be found in the record of this case, but the record shows that there was one filed with the

justice, and that there was also an amended complaint filed in the district court; but the clerk certifies that both were abstracted from his office. No point however has been made by either side on account of the complaint being missing, and both sides agree as to what it contained.

The first question is, whether the United States is a person within the meaning of said chapter. We think it is. Gen. Stat., 999; § 1, subdivision 13. Section 314 of the act relating to crimes and punishments (Gen. Stat., 384,) is probably, as defendant claims, not applicable to this case; but it is not so certain, as defendant supposes, that § 321 of the criminal code is not applicable. It is true that the offense charged in this case is a misdemeanor, of which justices of the peace as well as the district courts, have original jurisdiction; (Gen. Stat., 1096, § 1; Laws of 1869, ch. 61, p. 147;) and that this case was tried before a justice of the peace. But justices of the peace in the trial of misdemeanors are governed by the code of criminal procedure as well as the district courts except where it is otherwise provided by statute.' (Gen. Stat., 882, § 20.) Hence it would seem to follow that said § 321 of the criminal code is applicable to this case. Under either of said sections—§ 1, p. 999, § 314, p. 384, § 321, p. 871, Gen. Stat.—the United States is a person. The question whether the Sac and Fox Reservation is a person is not raised by the record of this case; nor did the court below charge the jury, as the defendant claims, that the Sac and Fox Reservation was a person.

We agree with counsel for defendant, that the act of cutting down and carrying away timber, rails, etc., from the land of another, must be a wrongful or illegal act, or it cannot be prosecuted either civilly or criminally under said chapter 113. It must be a trespass within the meaning of the title of said chapter, and committed without authority from the owner, in order to be prosecuted, although it need not be technically a common-law trespass. *Fitzpatrick v. Gebhart,* 7 Kas., 35. But the record does not show that this principle was violated in the trial of the cause below. The defendant

claims that it was violated by the instructions of the court to the jury. But as none of the evidence is brought to this court we cannot tell whether it was or not, or whether the court erred in any other respect in its instructions to the jury. It is probably true, as is claimed by the defendant, that the court charged the jury that if the defendant cut down the trees or carried away the rails, etc., as charged in the complaint, that he was guilty, omitting to state that the act must be done without authority from the owner, or without any right on the part of the defendant. Now if there was any conflict of evidence as to whether the defendant had any right to take the timber or rails, or if there was any doubt as to what the evidence proved upon this subject, then the question of what the finding should be was one of fact, and belonged exclusively to the jury; but if the evidence was all one way, and if there was no doubt as to what it proved, all tending to show that the defendant had no right to take the timber or rails, then the question was properly one of law for the court, and the court had the right to tell the jury that under the evidence the defendant had no right to take timber or rails from said land. There is nothing in the record that shows that there was any controversy upon this subject. There is nothing to show that the defendant made any claim, or pretense even, that he had a right to cut timber, etc., on government land. And where a party brings a case to the supreme court, and fails to bring any of the evidence that was introduced on the trial below, it must be presumed that the evidence was all against him, and that it sufficiently proved all the facts found against him. We do not wish to decide that where the evidence is all one way, and unquestionably proves the fact for which it is introduced, that the court is bound to tell the jury that the fact is proved, and instruct them to find accordingly; but we do decide that in such a case the court may tell the jury so, and so instruct them without committing error.

The instruction that "Proof that the alleged trespass was committed on the Sac and Fox Diminished Reservation would

be proof that it was committed on the property of the United States," was not erroneous.   The court, as we think, merely stated that such proof would be legal proof, that is, some proof upon the subject, a circumstance tending to prove the ownership of the land upon which the alleged trespass was committed; but the court did not say that such proof would be conclusive, or even *prima facie* proof, upon the subject. The court did not say that it would be sufficient of itself to prove the ownership of the land.   Under the treaty with the Sacs and Foxes of February 1st 1867—proclaimed October 14th, 1868, 15 U. S. Stat. at Large, 495—the United States became the owner of all of said diminished reserve, and was of course the owner of the same at the time this alleged trespass was committed, which was sometime between November 16th 1868 and November 16th 1870, unless the government transferred the title to some other person.   Whether it devolved upon the state to show that the government had not parted with its title, or upon the defendant to show that it had, is not a question in this case.   We suppose it is hardly necessary for us to say that said treaty is a public law, of which the courts must take judicial notice.   The judgment of the court below is affirmed.

All the Justices concurring.