## The People on the relation of William H. Rice v. The Auditor General.

*Auditor General: Refunding tax purchases: Tax titles: Tax purchasers.* The auditor general cannot refund any money upon the failure of tax titles except. as some statute requires it; the state does not guarantee tax titles except as statutes may provide for it; and in all other cases the purchaser must be content with such interests as he gets under his tax purchase.

*Statute construed: Refunding tax purchases: Judgment annulling ·tax title: Ejectment.* The act of 1858 (*Sess. L. 1858, p. 190,* § *103*), providing for the refunding of the purchase money and interest in case a tax title had been "annulled pursuant to law," when a copy of such judgment is presented to the auditor general, does not authorize such repayment in a case where the tax title has merely been introduced in evidence in an ejectment suit and held defective; but the judgment to which it refers is a judgment acting directly upon the title under a proceeding authorized by this statute, analogous to a bill to quiet title; and the system inaugurated by this statute having been held unconstitutional in *Waldby v. Callendar, 8 Mich., 430,* this section became inoperative.

*Ejectment: Judgment.* A single judgment in ejectment is not necessarily final for any purpose.

*Statute construed: Refunding tax purchases.* Under the act of 1863 (*Sess. L. 1863, p. 196*), the purchaser's right to re-imbursement only arises where either (1) the land was not subject to taxation at all, or (2) the taxes had been actually paid in due time, or (3) a certificate had been given in due time by the proper officer that no taxes were charged on the land; and does not apply to a case where the land was subject to taxation, and taxes have been actually assessed, even though irregularly and illegally, and no attempt has been made to ascertain and pay them.

*Local taxing officers: Irregularities: Tax purchasers.* Under our statute the state does not assume any responsibility for irregular conduct on the part of the local taxing officers; and the tax purchaser has the same means of ascertaining the legality of the tax, that are possessed by any of the state authorities.

*Heard July 14. Decided July 15.*

Application for *mandamus*.

*G. Morris,* for relator.

*Isaac·Marston, Attorney General,* for respondent.

CAMPBELL, J.

The relator, in October, 1868, became purchaser at a tax sale of certain lands in ·Monroe county, sold for taxes of 1867, and obtained a deed therefor, afterwards, on surrender of the certificates.

On the 26th day of September, 1872, upon the trial of an ejectment suit, the circuit court for Monroe county held the tax title void for illegality in certain ditch taxes, which made up the greater part of the tax for which the sale was made.

The relator, having applied to the auditor general, with a proper showing of these facts, and asked him to refund the purchase money, with interest, and that officer having refused, obtained an order from this court requiring respondent to show cause why he should not be compelled by *mandamus* to refund the money. · Cause is shown by demurring to the legal sufficiency of the case made by these facts.

It is admitted by counsel on both sides that the auditor general can only act in accordance with positive law, and cannot refund any moneys upon the failure of tax titles, except as some statute requires it. The state does not guarantee tax titles, except as statutes may provide for it. In all other cases the purchaser must be content with such interests as he gets under his tax purchase.

There are only two statutes claimed by either counsel as regulating the action of the auditor general. One is section 103 of the old tax law, as contained in the amendatory act of 1858.—*Laws of 1858, p. 190.* The other is "an act to authorize the auditor general to refund money paid for taxes and on tax sales, in certain cases."—*Laws of 1863, p. 196.*

The act of 1858 is relied on by the relator, as broader than the act of 1863, and not repealed by it. The language of section 103, is as follows: "In all cases where lands sold for taxes have been conveyed by deed, *and the title has been annulled pursuant to law,* the auditor general shall, on presentation of *a copy of the judgment annulling the same,* refund to the holder of said title, the purchase money and interest thereon, as the law requires, and certify the fact to the proper county treasurer."

The first thing that attracts notice in this section is

that the judgment which is to create the right to re-imbursement is a judgment "annulling" the title.   This, when taken according to its terms, would seem to mean a judgment or decree acting directly on the title, and not one where the title has merely been introduced in evidence, and held defective.   In an action of ejectment the judgment never refers in terms to any particular origin of title. It simply finds the plaintiff entitled, or not entitled, to a right in the lands.   No one can tell from pleadings or judgment whether either party relies on a tax title, and a single judgment in ejectment is not necessarily final for any purpose.

On looking further into the act of 1858, it will be found that section 103 is only a part of a new and peculiar system by which the legislature attempted to provide a new process for "annulling" irregular tax deeds.   By sections 101 and 102, persons having interests in lands sold for taxes were authorized to set in motion a sort of chancery suit before a circuit court commissioner, analogous to a bill to quiet title.   From him an appeal lay to the circuit court. The decree or judgment was one directly affirming or "annulling" the title.   A certified copy of the judgment was to be recorded in the office of the register of deeds, and an entry of annulling or affirmance made on the face of the deed when recorded.

This was the judgment annulling the tax deed which is referred to in section 103.   It was a judgment showing on its face the title so annulled.

This system having been held contrary to the provisions of the constitution, because giving to a circuit court commissioner the full powers of a court of chancery (*Waldby v. Callendar, 8 Mich. R., 430*), the section in question became inoperative.   It never referred to a judgment in ejectment, or to any but one operating specifically on the tax title.

It cannot be claimed that the statute of 1863, or any other statute to be found, which was in force at the time

of this tax sale, authorizes money to be refunded upon every failure of title. By that statute the auditor is authorized to act in cases where either (1) the land was not subject to taxation at all at the date of the assessment, or (2) the taxes had been actually paid in due time, or (3) a certificate had been given in due time by the proper officer, that no taxes were charged on the land.—*Laws of 1863, p. 197.* If the land was subject to assessment, and if taxes had been actually assessed, whether legally or illegally, and no attempt had been made to ascertain and pay them, no provision was made for refunding. The purchaser's right to re-imbursement only arose where there was either no jurisdiction over the land, or else a payment or attempted payment of the taxes actually levied; so that the state had received double payment, or had precluded itself from demanding the tax by assuring the land owners that no tax existed.

In such cases as these the equity is clear and palpable, and the state has properly acknowledged itself liable for its own wrong, against parties who owed it nothing legally or equitably. It has not seen fit to assume a responsibility for irregular conduct on the part of local officers, where every tax purchaser has at least the same means of knowing the legality of the tax, that are possessed by any of the state authorities, and has practically much better facilities than the auditor general, who cannot investigate in person the local records.

It follows that the relator has shown no right to have his money refunded, and the auditor general was doing his duty when he refused it.

The *mandamus* must be denied, with costs.

The other Justices concurred.