THE BOARD OF COMMISSIONERS OF LYON COUNTY v.
E. L. GODDARD.

1. TAX-SALE CERTIFICATES; *Defective Descriptions; Tax Deed.* Where lands are levied on, placed on the tax-roll, advertised for sale, sold, and entered in the book of tax sales, and described in the tax certificates only as "137 A. of S. E.¼ sec. 27, town. 20, range 12," "2½ A. of W.½ of W.½ of S.W. of S. E.¼ sec. 8, town. 19, range 12," and "5 A. N.W.¼ sec. 2, town. 19, range 11," and there is nothing outside of such descriptions to identify the land, the descriptions are so uncertain in each case that the assessment and all the subsequent tax proceedings are void. The irregularities are so great that the county clerk ought not to convey any portion of the same by tax deeds.

2. TAX TITLES; *Caveat Emptor; Refunding Moneys.* A county does not guarantee tax titles, except as the statute may provide for it. Neither the board of commissioners of a county, nor the county treasurer, can refund any moneys upon the failure of tax titles, except as some statute requires it.

## *Error from Lyon District Court.*

THIS action was commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover an amount of money alleged to be due the defendant in error as assignee of certain tax certificates. He set forth in his petition seventeen separate causes of action; but as the legal questions involved in each cause of action are precisely the same as those involved in the others, it will be necessary to state the facts set forth in only one of such causes of action. The facts alleged in the first cause of action are substantially as follows: That on May 6, 1873, the county treasurer of Lyon county received from one Wm. H. Goddard the sum of $22.71, being the amount of tax delinquent and charges thereon, for the year 1872, on a piece of land then sold to said Goddard at a tax sale; that the treasurer thereupon issued and gave to Goddard a tax-sale certificate of that date, in which certificate the description of the land purported to have been sold was only as follows: "137 A. of S. E.¼ sec. 27, town. 20, range 12;" that said land had been levied upon, placed on the tax-roll, advertised for sale,

sold, and entered in the book of tax sales in said county, by
the same insufficient, imperfect and void description, and the
treasurer afterward received subsequent taxes thereon from
the holder and owner of the certificate, for 1873, 1875, and
1876; that on July 21, 1873, said Wm. H. Goddard trans-
ferred the certificate, and all his interest therein, to the
plaintiff, *E. L. Goddard,* by his written assignment indorsed
thereon, who has ever since been the holder and owner of
the same; that on January 10, 1878, the plaintiff presented
said certificate to the county clerk of said county, and re-
quested the clerk to indorse thereon his refusal to convey the
land, which indorsement the clerk refused to make; that
plaintiff then presented the certificate to the treasurer of said
county, and demanded that said treasurer should refund the
amounts so received by him for said certificate and the sub-
sequent taxes and charges thereon, with interest at ten per
cent. per annum, which he refused, and no part of the same
has been paid; that plaintiff has duly presented his claim to
said board of commissioners of Lyon county, for allowance
against the county, and the same has been refused. In the
second alleged cause of action, the land sold was described as
"$2\frac{1}{2}$ A. of W. $\frac{1}{2}$ of W. $\frac{1}{2}$ of S. W. of S. E. $\frac{1}{4}$ sec. 8, town. 19,
range 12;" and in the third alleged cause of action, the land sold
was described as "5 A. N. W. $\frac{1}{4}$ sec. 2, town. 19, range 11." The
descriptions set forth are a sample of the descriptions in all
the seventeen cases, and in all of said descriptions there is
nothing outside thereof to identify the lands. The defendant
filed its demurrer to the petition of the defendant in error,
which was overruled by the court. It then filed its answer
to the petition, to the effect that none of the several tax sales
named therein were ever adjudged void by the defendant, the
county clerk, or any court or other competent tribunal; that
the county clerk has never discovered any error or irregular-
ity in the description of the several tracts of lands in the pe-
tition, or that either of them ought not to be conveyed; and
that he has never refused to convey the same, or either of
them. The plaintiff demurred to said answer, which was

sustained by the court. The defendant not desiring to answer further, the court rendered judgment in favor of such plaintiff for the full amount claimed by him.

The defendant brings the case here on error, and seeks a review of the rulings and decision of the trial court, and a reversal of the judgment.

*Sterry & Sedgwick*, for plaintiff in error:

The plaintiff in error claims that the petition of the defendant in error does not state facts sufficient to constitute any cause of action against it, for the following reasons:

1. The defendant in error, at the time of his purchase, had just as full knowledge that the tax-sale certificates sued upon were void upon their face, as he had at the time of commencing this suit. Therefore there are no equities existing in his favor which call upon the court to protect him, and to adjudge that the money which he paid for nothing be refunded to him.

2. As the defendant in error stands in the shoes of his assignor, we shall consider this case the same as though he was the party who purchased at such tax sale, and to whom the certificates were originally issued. Taking this view of the case, two propositions of law seem to be applicable— First: If the land sold was correctly described and correctly sold, then the purchaser's only remedy in such a case would be to have new certificates of sale, correctly describing the land sold, issued to him by the county treasurer, in lieu of the void and defective ones disclosed by his petition. Second: If he purchased the lands under the same descriptions as are contained in his certificates of purchase, then he bought with his eyes open, and cannot now be heard to say that he supposed he was getting anything else than just that which he did get. In such a case, he voluntarily paid his money for nothing, and cannot now call upon a court to help him get it back. It seems to us that he stands in the same position as a man who voluntarily pays to a treasurer taxes which are not due from him, and as to which his payment is volun-

tary. In such a case, it is well settled by the court that a party cannot recover. (5 Kas. 412; 8 Kas. 431; 16 Kas. 587.)

3. It seems to us that this court has well settled the proposition that where a party attempts to purchase land at a tax sale, with full knowledge that in' fact he is not buying the land, that he cannot recover the money so paid for its purchase. (*Sapp v. Comm'rs of Brown Co.*, 20 Kas. 244.) Cooley, in his work on Taxation, lays down the general rule that a purchaser at a tax sale is never a *bona fide* purchaser. (Cooley on Taxation, pp. 328, 329.) In the note to his text, he lays down the proposition "that a tax purchaser comes strictly within the rule of *caveat emptor*, and that if his title fail for any reason, he has (outside of any statutory enactment) no remedy against the collector or the municipality for whose benefit the land was sold." To this general rule there are two exceptions created by our statutes. That the case of the defendant in error falls within neither of these statutory exceptions, is shown both by the petition of the plaintiff in the court below and the answer of plaintiff in error thereto. ·This answer was admitted .to be true by the demurrer, which the court sustained thereto. Again, the exceptions to the general rule created by the statute are held to apply only to cases coming strictly within the provisions of the same. (30 Mich. 12.)

4. In any view of the case, it hardly seems that Lyon county can be liable to the defendant in error. There is nothing in his petition to show that said county ever received one dollar of the money that was paid upon said certificates. If he had presented his claim for allowance to plaintiff in error, it would have had no power or authority to have audited the same. (*Comm'rs of Saline Co. v. Young*, 18 Kas. 440.)

*E. S. Waterbury*, for defendant in error:

Section 120 of ch. 107, Gen. Stat., slightly amended by § 145, ch. 34, Laws of 1876, was in force at the time of the sale in question. Section 121, ch. 107, Gen. Stat., provides

in what cases the money paid for any land sold for taxes is to be refunded, "after the conveyance," if it shall be discovered or adjudged that "the sale was invalid," which latter words are evidently synonymous with the corresponding language in § 120. Construing § 120 and § 121 together, we see that when there is any irregularity or error in the proceedings invalidating the sale, the money paid on such sale is to be refunded. In the language of § 120, "lands ought not to be sold" in any case in which if a deed were made the county would be compelled to refund the money paid, with additional costs and interest, under § 121. Observe that the first part of § 120 *forbids* a sale where there is error in the assessment. Under § 32, ch. 107, "each assessor shall make out . . . a correct and pertinent description of each parcel of real property in his county, and he may require the owner or occupant of such property to furnish such description; . . . or the assessor may employ a surveyor to ascertain the boundaries and quantity of such property, and the expense of such survey . . . shall be added to the tax upon such property." Under § 37, the assessor, when making his return of the valuation of real estate, makes oath that the return contains a correct description of each parcel of real property within his county, as far as he has been able to ascertain the same, and that the value attached to each parcel in said return is, as he verily believes, the true value thereof. Section 39 requires the county clerk to correct any error in the description or quantity of land contained in the list of real property in his county, on the tax-roll, before or after the same has been delivered to the county treasurer. No further corrections are authorized by the statute, and from the nature of the case it is too late to make them after the publication of the delinquent tax list.

The authority for the sale of one's land without any correct and pertinent description thereof, either upon the assessment-roll, the tax-roll, in the delinquent advertisement, the certificate of sale, or in the sale record, must be sought for outside of any statute yet enacted. The conditions precedent

which confer upon the county officers the power to make the sale, have been in the present case ignored, and thereby the sale is invalid, and the county must refund. That such an assessment is void, and that such a sale is void, and that a deed thereon would be void, see *Head v. James*, 13 Wis., and cases there cited.

If the sale is void, the county is liable to refund; and the fact that the purchaser might take a tax deed and bring an action to bar the owner, in which he would recover either the land or the money which he had paid with a high rate of interest, does not prevent him from reclaiming the money from the county. (*Barden v. Columbia Co.*, 33 Wis. 445.) On a motion for a rehearing in the above, the court decided that if the sale be void, the right of recovery exists at common law, independent of the statute. In *Norton v. Rock Co.*, 13 Wis. 611, the common-law liability of the county, in addition to that given by statute, is declared, and placed on the principle that money paid for a consideration which fails, may be recovered. The theory that a buyer at a tax sale is like a buyer at a sheriff's sale, and buys at his own risk as to title, is denied on the ground that at the tax sale it is not the title which fails, but the authority to make any sale at all. *Curtis v. Brown Co.*, 22 Wis. 167, was an action brought by the assignee of tax-sale certificates against the county for the money paid, upon the ground that the sales were void, by reason of imperfect descriptions of the land, and decides that a false or mistaken description avoids the sale, the certificates and the deed. The proceedings are void as to the owner, and being so, are void as between the county and the purchaser at the tax sale, his assignee, and the grantee by the tax deed.

The interest as well as the duty of the county is to refund this money, to which it has no right, and thus clear the way (for the owners escape taxation while the county treats these sales as valid) to correct the descriptions, and assess against these lands the back taxes, as provided in §1, ch. 147, Laws 1875. *Emporia v. Norton*, 13 Kas. 269, confirms the constitutional right to relevy in such cases; while on the other

hand, *Hobson v. Dutton*, 9 Kas. 477, decides that an attempt to charge up subsequent taxes to a void sale is inoperative, and the land remains liable to sale for non-payment of such subsequent taxes.

The argument of plaintiff, that we cannot recover because the invalidity of the sale appears on the certificates, proves too much. A tax sale is the culmination of proceedings which are matters of record, and the tax purchaser is always deemed to have notice when the record shows defects, and the application of these rules to prevent recovery from the county would exclude nine of every ten cases which the statute clearly includes, and would defeat the precise object of the statute in this respect; and to distinguish between the cases where the defects may and where they may not be discovered from the certificates, would be a distinction not made by the statutes. The county clerk, as the pleadings indicate, saw no defect in these sales when the certificates were presented to him, and it may be inferred that defendant thought the same when he took the certificates; but if defendant is chargeable with the legal effect of what may be gathered from the certificates, they gave him notice only of defects which new certificates would cure, viz., insufficiency of description in the certificates. They could not inform him that the assessments, the advertisements, and all the other proceedings, were void, as in this case. There is in this case no analogy to the cases of voluntary payments of disputed claims, in 5, 8 and 16 Kas., cited for plaintiff. In *Sapp v. Brown Co.*, 20 Kas. 244, the tax sales were not invalid, and Sapp had no assignments of the certificates, if they had been.

The language of Judge Cooley, cited, refers only to the sufficiency of tax titles as against adverse claimants of the title; while the case in 30 Mich. 12, was against a state officer who could act in certain straight and particular cases only, and who had no facility for investigating local records, and, unlike this case, has reference to the liability of a state.

*Sterry & Sedgwick*, for plaintiff in error, in reply to the

brief for the defendant in error, claimed that his counsel mis-stated the force of § 120, ch. 107, Gen. Stat., in this, that—

1st. The treasurer only refunds upon the county clerk's discovering that the land for which a tax-sale certificate has been issued, ought not to be conveyed by reason of some irregularity or error in the proceedings. As we understand the statute, the treasurer does not refund until the clerk makes such discovery. Again: The tax-sale certificates were not void by reason of any irregularity or error; they were void simply because they described no land whatever, and hence conveyed no interest in any lands. Again: If the defendant in error relies upon this statute as giving him the right to recover, his action should have been brought against the county treasurer, and not against the board of county commissioners, as the statute requires the county treasurer, and not the commissioners, to pay back the money paid for such certificates.

2d. The right of the defendant in error to recover of the plaintiff in error must be based either upon a contract express or implied, or upon some statute, or upon a tort. There is, in any view of the case, no express contract, neither is there any implied contract, for the money paid by the defendant in error and his assignors was not paid to the plaintiff in error for its use or benefit; neither is there any statute which authorizes the plaintiff in error to refund the money, or which gives to the defendant in error the right to recover the same from the plaintiff in error. By the provisions of the statute, all claims which are valid claims against the county must first be presented to the board of county commissioners for allowance. This court has decided that the county board could not allow such a claim as the one stated in the petition of the defendant in error. This being the case, the logic of the statutes and of this decision conclusively proves that defendant in error has no right to recover from the plaintiff in error on the cause of action stated.

3d. In any view of the case, the payment of subsequent

taxes by the defendant in error on these void certificates, was a voluntary payment which cannot be recovered.

4th. The Wisconsin cases cited are contrary in principle to the general current of authority upon this question, if they decide, as claimed by the defendant in error, that a purchaser at a tax sale is not bound by the rule of *caveat emptor.* Again: As this court has already decided that a purchaser at a tax sale cannot recover by virtue of any common-law right, those decisions are opposed to the judgment of this court, as already declared.

The opinion of the court was delivered by

HORTON, C. J.: The plaintiff in error claims that the petition of the defendant in error does not state facts sufficient to constitute any cause of action against Lyon county or the board of commissioners; and within the case of *Commissioners of Saline Co. v. Geis,* ante, just decided, the claim is correctly made. Whether the case was prosecuted and disposed of under § 145, ch. 34, Laws 1876, or § 120, ch. 107, Gen. Stat. 1058, is immaterial. The sections are nearly similar. No allegation is made in the petition that the county treasurer was without funds with which to pay the defendant in error, and really no reason is given for making the county board a party, except that the treasurer refused to refund his money, and that it has not been returned to him. This is not sufficient. The facts stated neither make the county nor its board of commissioners liable.

Under said § 145, the allegations are not even sufficient to charge the county treasurer, if he had ample funds in his hands for the specific purpose of paying these claims, and had been made a party defendant. Before he can refund, under the law of 1876, the certificate must be indorsed with the refusal of the county clerk to convey. In this case, the descriptions of the lands assessed and sold for taxes are so uncertain and imperfect that all the tax proceedings, including the certificate, are so erroneous and irregular that the lands ought not to be conveyed. These irregularities are patent on

the face of all the records and certificates. Indeed, the defects are so palpable, that when pointed out to the county clerk, he had no legal right to refuse to discover them, and in the performance of his official duty he ought to have indorsed the certificates with his refusal to convey. He had no right to be blind to such errors and irregularities. He might have been compelled to make the indorsements by mandamus, or an action for damages against him could have been maintained, but in the absence of the indorsements under said §145, the treasurer had no right to refund the money paid.

In this connection we may say, that the answer of the plaintiff in error presented no issuable fact, and the demurrer thereto was properly overruled. If errors or irregularities actually exist, so that the land ought not to be conveyed, it is the duty of the county clerk to discover them when his attention, as in this case, is specifically called thereto; and the fact that he purposely refuses to discover, or refuses to admit the discovery of the errors and irregularities, is no obstacle to the treasurer refunding the money under §120 of Gen. Stat., and only material under the new §145 of Laws of 1876, in that the county treasurer cannot act until the county clerk has indorsed his refusal to convey on the certificates, and it is not likely the clerk will make such indorsement so long as he refuses to discover any error or irregularity.

Counsel for defendant in error seems to contend that, independent of the statute, the money paid on the tax certificates may be recovered back. The decisions in New York, Wisconsin, and perhaps some other states, support this doctrine. We think the better rule the other way. A purchaser at a tax sale is a mere volunteer in the payment of the tax. Buying, as he does, property from a person who is not the owner, such party comes strictly and rigidly within the rule of "*caveat emptor.*" He has the same means of knowing whether the proceedings relating to the assessment of the taxes, the tax sale, and the issuance of the certificate, are valid or not, as the county has, and he is bound to inquire whether the

officers have authority to make the sale. As all the proceedings are matters of record, it is not only prudent for such a purchaser to examine into the matter for his own safety, but if he fails to inform himself of the authority of the officers, he does so at his own risk, excepting that he may have his money refunded where the statute expressly makes such provision, if he pursues the remedy pointed out. The officers of a county can only act in accordance with positive law; and neither the board of commissioners nor the county treasurer can refund any moneys upon the failure of tax titles, except as some statute requires it. (Cooley on Tax., ch. 24, p. 572; Blackwell on Tax Titles, ch. 26, p. 413; *Sapp v. Comm'rs of Brown Co.*, 20 Kas. 243; *Hamilton v. Valiant*, 30 Md. 139; *Lynde v. Inhabitants of Melrose*, 10 Allen, 49; *The City of Indianapolis v. Langsdale*, 29 Ind. 486; *Rice v. Auditor General*, 30 Mich. 12; *Phillips v. Jefferson Co.*, 5 Kas. 412; *Wabaunsee Co. v. Walker*, 8 Kas. 431; *K. P. Rly. Co. v. Wyandotte Co.*, 16 Kas. 587.)

The petition being fatally defective, the judgment of the district court will be reversed.

All the Justices concurring.