Sullivan v. Davis.

DANIEL SULLIVAN, *et al.*, v. DORINDA DAVIS, *et al.*

1. TRESPASS, *Remedy for.* The owner of vacant and unoccupied real estate, although not in actual possession, may maintain an action for treble damages, under § 1, ch. 113, Comp. Laws 1879, against one who, without any authority or right thereto, cuts and carries away timber growing thereon. (*Fitzpatrick v. Gebhart*, 7 Kas. 35.)

2. ——— *Caveat Emptor. Caveat emptor* is, except as limited or qualified by express provisions of statute, universally applicable to all purchases at tax sales.

3. TAX ROLL; *Correct and Incorrect Description.* Where property is once entered on the tax rolls by a legal and correct description, and under that description the owner pays the taxes, and this is continued from year to year, the owner is under no obligations to search the tax records to see if thereafter his property is not a second time entered upon the tax rolls by a different and incorrect description.

4. TRESPASS; *Invalid Defense.* If after the owner has paid the taxes on his land, as it appears on the tax roll by its legal and correct description, the same property is under a different and incorrect description sold for non-payment of taxes, the purchaser cannot interpose such tax title as a defense to an action for treble damages for trespasses committed on the property.

5. ——— An act of the territorial legislature, creating a municipal corporation, and including certain territory within its limits, did not have the effect to divide any portion of such territory into blocks and lots.

6. ——— Where the legislature prescribed a particular procedure for laying off and platting real estate into streets, blocks and lots, such procedure controls, and no action of third parties in a different way, operates to divide a party's real estate into blocks or lots.

7. ———— *No Estoppel.* The owner of real estate is not estopped from denying the validity of an alleged subdivision of his property into blocks and lots, by knowledge that a lithograph map showing such subdivision is being circulated through the country.

8. ———— *Limitation of Action.* Where the trespass complained of is in cutting down and carrying away timber, the cutting and carrying away may be considered as two parts of a continuing trespass, and the statute of limitations will run only from the completion of the carrying away.

9. ———— Where one, holding a supposed but really void title to land, conveys the same to a third party, he does not thereby render himself liable for any trespasses of the latter upon the property.

10. ———— An action to recover treble damages under said ch. 113 is one upon a statute, for a penalty, and is barred within one year, under subdivision 4 of ? 18 of the code of civil procedure.

*Error from Atchison District Court.*

ACTION by *Davis* and others against *Sullivan* and others, to recover treble damages for cutting and carrying away timber from certain real estate belonging to plaintiffs. Trial at the November Term, 1881, of the district court, and judgment for plaintiffs. The defendants bring the case here. The opinion states the facts.

*W. W. Guthrie,* for plaintiffs in error.

*Webb & Martin,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by plaintiffs in the district court of Atchison county, under § 1, ch. 113, Comp. Laws 1879, to recover of defendants treble damages, for cutting and carrying away timber from certain real estate belonging to plaintiffs. Verdict and judgment were in favor of plaintiffs, and defendants allege error. The case, as to many of its facts, is peculiar. Its exact parallel we have not been able to find in the books; and its like will probably never arise again. Yet the principles which underlie its decision are, we think, neither novel nor difficult. The facts are these: The plaintiffs were the owners of a certain twenty-

acre tract of land. Their title was absolute and perfect.
This title they had held since 1866, taking it then, by inher-
itance, from one William L. Davis, who held it by regular
chain of title from the government. All taxes levied thereon
had been duly and seasonably paid. The land was vacant
and unoccupied. In the winter of 1879 and 1880, defend-
ants entered upon one portion of it, cut and removed the
timber. The only possession of defendants was their occu-
pation for the purpose of cutting and removing timber. The
land was rocky, and covered with some young timber. It
appears from the testimony, that the plaintiffs had been get-
ting their fire-wood from this tract, and had at one time, years
ago, cut some trees upon the particular portion of the tract
upon which the trespass is alleged. It is also true, that after
1871 the defendants made a claim of title to this last-men-
tioned portion of the tract, and warned parties off from it.
But except in these trifling matters, and the occupation for
the purpose of cutting and removing the timber in contro-
versy, there was no actual possession by either party. Of
course, the constructive possession followed the legal title,
and was in plaintiffs. Now the first proposition of counsel
for defendants is, that no action can be maintained under
this statute for trespass upon property not in actual possession
of the plaintiffs. But the converse of this proposition has
already been decided in this court, (*Fitzpatrick v.*
*Gebhart,* 7 Kas. 35,) in which it is expressly de-
cided, that under such statute the owner of real estate may
recover the damages therein provided for, whether he be in
possession of the real estate or not. These cases also tend to
sustain the same doctrine, although perhaps not positively
deciding it: *Wright v. Brown,* 5 Kas. 600; *The State v. Her-*
*ald,* 9 Kas. 194; *The State v. Armell,* 8 Kas. 288; *Railway*
*Co. v. Arnold,* 10 Kas. 473. See also *Vandusen v. Young,* 29
N. Y. 9; *Edwards v. Noyes,* 65 N. Y. 125; *Marr v. Boothby,*
19 Me. 150; *Griffin v. Creppin,* 60 Me. 270.

1. Trespass;
remedy.

As heretofore stated, the defendants made a claim of title
to the real estate; and the next question is, whether such title

was of any validity, and if invalid, whether it was colorable, and such as would defeat plaintiffs' remedy under the statute. This is probably the important, as well as the most difficult question in the case. The land as claimed by plaintiffs was described as the west half of the northwest quarter of southeast quarter of section 20, township 6, range 21. By that description it had been conveyed; by that entered on the tax rolls, and the taxes thereon duly levied and paid. On the other hand, it appears that this tract was within the limits of the town site of Sumner, as prescribed by ch. 106, Private Laws 1859. Also, that in 1858 a lithograph map of the town of Sumner was prepared and generally circulated, upon which that portion of plaintiffs' lands upon which the trespass was committed was platted into streets and blocks, and described as blocks 61, 62, 63, and 64. Also, that a map or plat of Sumner City, with the same showing of blocks, was made and recorded by the county surveyor in the plat book of the register of deeds office, on December 31, 1859. Also, that upon the tax books of Atchison there was entered for taxation for the years 1866, 1867, 1868, 1869 and 1870, said blocks 61, 62, 63, and 64, and that the taxes were duly levied thereon, the property sold, and deeded to one of the defendants. This was the basis of their claim of title. On the other hand, it appeared that in pursuance of ch. 24, Laws of 1859, the Sumner Town Company did, on April 15, 1859, file a map or plat of said city, duly acknowledged as required by law. Upon this map or plat, the property in question does not appear subdivided into blocks, nor do any such blocks as 61, 62, 63, and 64, appear thereon. One thing further should be stated, and that is that this lithograph map had been generally circulated through the country during the years 1858 and 1859, and this with the knowledge of I. B. Norris, then owner of the 20 acres. The testimony offered by defendants was all rejected; the court holding that it was insufficient to show that this property had ever been platted into blocks, as a part of Sumner City, and that the tax deed based upon such subdivision into blocks, was an absolute

nullity. This, as we have said, is the important question in the case. We think the ruling of the district court was correct. In the first place, all the taxes legally chargeable upon this land had been paid by the owners; hence, by the statute, no sale or conveyance was "of any validity." (Comp. Laws 1879, ch. 107, § 140.) In the second place, the public authorities cannot, by merely changing the description, tax a piece of real estate twice. Thirdly, except as limited and qualified by express statutory provisions, the rule of *caveat emptor* applies to all purchases at tax sales, and if the public has nothing to sell, the purchaser gets nothing. (*Lyon County v. Goddard*, 22 Kas. 389; *Hart v. Henderson*, 17 Mich. 218; *Lynde v. Melrose*, 10 Allen, 49; *Packard v. New Limerick*, 34 Me. 266; Cooley on Taxation, pp. 375 and 472.) So, also, the risk of all mistakes is with the tax purchaser. Fourthly, where property has once been entered upon the tax rolls by a certain legal and proper description, the owner may in subsequent years pay upon the same description, unless by some legal proceedings the description has been changed. Now the testimony shows that this property was entered for taxation from at least the year 1864 by the description of "the west half," etc. The first time that the testimony shows any attempt to list it by blocks, was in 1866; so that the owners, finding it entered for taxation by a proper description, and so continued from year to year, were safe in paying taxes according to that description, unless in some legal way that description was changed. If thereafter, through some mistake of the taxing officers, the same property is entered a second time on the tax rolls by another and incorrect description, and under such description sold, the tax purchaser absolutely gets nothing as against the real owner of the land — no title to it, no right of possession, no right to be reimbursed by such owner the amount of taxes paid by him, no defense to any action for trespass upon the property. His only recourse is that given by statute against the county, at least as to everything except the value of permanent improvements.

2. Caveat emptor.

3. Tax roll — correct and incorrect description.

4. Trespass; invalid defense.

As to them, it is unnecessary in this case to determine the scope and effect of the occupying-claimant statute. As to all other matters the owner is entitled to full protection, to recover the possession if it has been taken from him, and to recover all common-law and statutory damages for injuries to the property. Neither was there anything to show any legal change in the proper description of the land, any legal platting of it into blocks. The mere fact that the legislature had included it within the territorial limits of the city did not operate to change its legal description, subdivide it it into lots and blocks, or authorize any one but the legal owner to subdivide and plat it. A county surveyor had no authority to act for the owner and subdivide or plat it. The legislature provided a method for its subdivision and platting. That was the only method, and no other proceedings, unless such as to work an estoppel upon the owner, were sufficient to accomplish a subdivision and platting, or a change in the legal description. The mere fact that parties were circulating a lithograph map worked no estoppel on the owner. He took no part in the circulation, did not authorize it to be lithographed, sold no property according to its description, made no representations to any one that it was correct; and the mere fact that he knew of its circulation, a circulation without his authority or consent, does not estop him or his grantees from insisting upon the very truth. Hence we conclude that the ruling of the district court was correct, and that there was nothing in all these tax proceedings and tax titles to interfere with the plaintiffs' right of recovery. This decision may be a hardship on the defendants, but if they invest in tax titles they must take all the risks, and except so far as the statute furnishes a remedy for failure of title, or mistakes of officers, they are absolutely remediless. The owner discharging his full duty to the public by the payment of all taxes, is entitled to the amplest protection.

7. No estoppel.

Thirdly, the defendants raise the question of the statute of limitations. The petition was filed January 15, 1881. The

testimony showed that the timber was cut in December, 1879, and carried away in January, 1880. The exact time in either month of the cutting or removal is not affirmatively and distinctly shown by the testimony or found by the jury. Now, the defendants contend that this action, being for a penalty, was barred within one year, under subdivision 4 of § 18 of the code of civil procedure. On the contrary, the court charged that the plaintiffs could recover for any trespass committed within two years. In answer to special questions, the jury answered that the timber was cut in 1879, and hauled away in 1880. They did not specify in their answer when the hauling was finished, whether before or after January 15, 1880. We cannot assume, therefore, that the hauling was continued until after January 15, 1880. Doubtless when timber is cut and hauled away, the trespass may be considered as a continuing trespass, not completed until the timber is hauled away, and under those circumstances the statute of limitations would

8. Limitation of action. not commence to run until the removal of the timber was completed; but in view of the uncertainty in the testimony, the instructions of the court, and the indefiniteness of the findings, we cannot assume that the trespass was continued until, and completed only after, January 15, 1880. Now while under subdivision 3 of said § 18 an action for trespass upon real estate can be prosecuted at any time within two years after the trespass, yet when the treble damages given as penalty by said ch. 113 are sought to be recovered, the action must be commenced within one year. It follows therefore that the recovery can be sustained only as to the actual damages for the trespass committed, and not for the treble damages given by said chapter 113. That an action under said chapter 113 is an action for a penalty, cannot be doubted. The general rule in respect to all torts is that compensation, and compensation alone, is recoverable. Where more than actual compensation is asked, it is by virtue of some express statute, and the excess is by such statute given in the way of penalty. We think, therefore, under the instructions

and the answers to special questions, only the actual and not the treble damages may be recovered.

A final matter is this: The tax deed was taken in the name of Daniel Sullivan. In the fall of 1879 he had given the land to his co-defendant and son, John Sullivan, to clear off and fence for a homestead for himself. In pursuance of the supposed right thus obtained, John Sullivan and his brother, the other defendant, had entered upon the land, and cut and carried away the timber. Daniel Sullivan's connection with these acts was only that of having given the land to his son. The court, in substance, instructed a verdict against all three of the defendants, and now plaintiffs in error insist that as to Daniel Sullivan this instruction was erroneous. The exact testimony of the witnesses is not stated in the record, but only in a general way the scope and substance of the testimony. Now we think that something more must be shown than that the father had given the land to his son, before the former would be liable under the statute for the trespass of the latter. Possibly as the testimony fell from the lips of the witnesses, it may have disclosed some direct interference or assistance on the part of the father; but as the record now reads, and of course that concludes us, it states that Daniel Sullivan's only connection with the trespass consisted in his having given the land to his son. This is an action under a statute. Treble damages are recoverable, and before a party can be justly held liable therefor it should appear that he in some way aided and assisted in the trespass. He cannot be held responsible, because having at one time held a supposed title he has conveyed it to another party who thereafter commits the trespass. A different rule would make it extraordinarily perilous for a party to convey a defective title, making him a *quasi* guarantor against subsequent wrongdoing of his grantees. The judgment, therefore, as to Daniel Sullivan will be reversed, and the case remanded for a new trial.

As to the other defendants, the judgment will be modified by reducing it to the sum of $33.33⅓, the amount of the

actual damages sustained by the trespass. The costs of this court will be divided between the defendants in error and the plaintiffs in error, Jerry and John Sullivan.

All the Justices concurring.