THE STATE OF KANSAS V. A. B. WILLIAMS.

No. 14,805. (85 Pac. 938.)

SYLLABUS BY THE COURT.

1. CRIMINAL LIBEL—*Corporation.* A private corporation as well as an individual is included in the word "person" as used in section 2271 of the General Statutes of 1901, defining the crime of libel.

2. —— *Evidence—Printed Circular—Truth of Portions Not Libelous.* Where, on the trial of a criminal charge of libel, a part of a printed circular has been introduced in evidence, portions of which are libelous and portions not libelous, it is not necessary for the defendant to prove or show the truth of such portions as would not in fact be libelous if not true.

The State v. Williams.

3. ——— *Erroneous Instruction.* In such a case, if the court in its instructions calls the attention of the jury to the portion of such printed matter which would not in fact be libelous if not true, and instructs them that before the defendant can justify the publication of this circular it must appear from the evidence that such portion is true, such instruction constitutes material error.

4. ——— *Evidence—Discretion of Trial Court.* On the trial of such a case all portions of the circular which in any way relate to the subject-matter of the portion or portions alleged to be libelous should be introduced in evidence by the state in proving its case, in connection with the portion alleged to be libelous, but where any portion of the circular is upon an entirely different subject, and in no way qualifies or explains the portion or portions alleged to be libelous, it is within the discretion of the trial court to exclude such portion.

Appeal from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed June 9, 1906. Reversed.

*C. C. Coleman,* attorney-general, and *E. L. Burton,* county attorney, for The State; *S. H. Allen,* and *John D. Milliken,* of counsel.

*W. D. Atkinson,* for appellant.

The opinion of the court was delivered by

SMITH, J.: The appellant was arrested upon an information filed by the county attorney and tried and convicted in the district court of Labette county on eight counts charging different publications of the following printed circular. The portions of the circular which are alleged in the information to be libelous are enclosed in brackets:

"[BUNCOED!

"Startling Exposure of the Methods Employed by the Farmers' Alliance Insurance Company, of McPherson, Kan.

"The Victim a Prominent Farmer Residing Near Parsons.]

"PARSONS, KAN., June 28, 1905.

"A matter of vast importance to the insuring public, especially the farming classes, has recently developed in connection

with the loss sustained by Mr. A. J. Higginbottom, a prominent farmer residing about three miles northeast of this city.

"Mr. Higginbottom purchased the John Brooks farm, and the insurance which Mr. Brooks carried on the property was transferred to Mr. Higginbottom, part of it being insured in the Farmers' Alliance Insurance Company, of McPherson, Kan., a so-called 'mutual' company.

"In the month of March a wind-storm damaged the barn and dwelling to the amount of $170; at least that was the amount of damages as estimated by the adjuster for that company. Mr. Higginbottom expected pay to the full amount of his damages, naturally, and based his expectation upon the policy, as he understood it, in which he carried $800 on the dwelling and $200 on the barn.

"Mr. Higginbottom was dumfounded when he was informed by the adjuster that he could only draw pay for just one-half of the amount of his loss, but such was the case. This was brought about by the fact that his policy was subject to any changes that the company saw fit to make, and as it had been changed he was unable to obtain pay for more than one-half of his damages, consequently he received only $85, although his loss was estimated at double that sum.

"Over a year ago Mr. Higginbottom's attention was called to that clause in his Alliance policy wherein the conditions could be changed on him, without his consent or knowledge, but Mr. Higginbottom deemed it of too little importance to consider, in fact thought it an impossibility. He has since discovered that A. B. Williams informed him correctly about having a changeable policy, as evidenced by the following statement:

"A. J. Higginbottom carried $1000 insurance against fire, lightning and tornado, in policy No. 39,467 of The Farmers' Alliance Insurance Company, of McPherson, Kan.; $800 was on dwelling and $200 on frame barn. In the month of March, 1905, a wind-storm demolished the barn, and damaged the dwelling some. The adjuster for that company estimated the damage at $150 on the barn and $20 on dwelling. [According to the conditions in the policy held by Mr. Higginbottom he was entitled to the full amount of his damages, but he was compelled to accept one-half of the estimated damages, on account of the fact that the company had changed the conditions of his policy, after it had been issued several months. The conditions of his policy had been changed, and he was not aware of it until the adjuster informed him after the loss occurred.]

"Mr. Higginbottom found upon a close inspection of his policy that it was subject to be changed, at the option of the company's directors, at least four times a year, without his knowledge or consent.

"State of Kansas, County of Labette, ss.

"I, W. W. Thompson, a freeholder, residing in Labette county, Kansas, declare that I heard the foregoing statement read to Mr. A. J. Higginbottom on this 7th day of June, 1905, and that Mr. Higginbottom declared that the statement was true, and that it set forth the facts in the case.

(Signed)      W. W. THOMPSON.

"Subscribed and sworn to before me, a notary public, in and for Labette county, Kansas, this 7th day of June, A. D. 1905.

[SEAL.]                 LEILA L. WILSON, *Notary Public.*

"My commission expires September 28, 1907.

"It develops that this company has been issuing policies of insurance which can be changed four times annually, even after being issued, and the assured is compelled to abide by the changes, which he has no voice in making, and no means of knowing anything about until he has a loss and settling time comes, then he is informed; at least that was as soon as Mr. Higginbottom had knowledge of a change in his policy.

"This company poses before the insuring public, especially the farming classes, as the benefactor of the Kansas farmers, claiming to be operated for the benefit of the insuring public, and on the 'mutual interests' plan, and instead of treating its members alike, as they should do, they seem to have no settled plan on which to write insurance, charging some of its members almost double the amount it charges others for the same kind of insurance. Some of its members are charged $2 per hundred for combined insurance for five years, while others are charged $2.75, $3 and $3.50 per hundred on the same kind of property. Some of its members are charged an advance cash payment of 20 per cent. of the full amount of their note, while others are charged 26, 27, 30, 35 and even 40 per cent. of the gross premiums, in advance.

"Policy No. 23,992 was issued to Isaac W. Galyen for five years, and he was charged only $2 per hundred for fire, lightning and tornado, while G. W. Guyton was charged $3.50 per hundred for five years for fire, lightning and tornado, in policy No. 24,846.

"G. W. Gruell was charged $1.50 per hundred for tornado for five years, in policy No. 28,565, while Isaac W. Galyen was charged $1 per hundred for tornado for five years, in policy No. 39,469.

"D. G. Daigh was charged $2.75 for fire, lightning and tornado, in policy No. 29,693, for five years, while Arthur Smith was charged $3.50 for fire, lightning and tornado for five years, in policy No. 31,225.

"Harry W. Lumm was charged a 35 per cent. advance cash payment on policy No. 42,047, while T. C. Joseph was only charged 27 per cent. advance payment on policy No. 31,591.

"S. R. Barker's advance cash payment was 20 per cent. under policy No. 28,242, W. A. Oler's 26 per cent. under policy No. 36,756, Arthur Smith's was 30 per cent. under policy No. 31,225, Chas. Bramer's 31 per cent. under policy No. 33,835, N. D. Tower's was 35 per cent. under policy No. 42,228, and Isaac W. Galyen's was 40 per cent. under policy No. 39,469.

"Mr. Grant Hume, who owns a suburban home near this city, was charged $3 per hundred for combined insurance for five years, as was also Mr. E. E. Lugeanbeal, who resides in the village of Montana, this county.

"These two properties are what is known as detached risks; that is, no hazard from other property.

"Mr. J. S. McEntire, of South Mound, and Mr. F. M. Liston, of Altamont, Kan., both carried a policy in the Alliance on prop-

erty much more hazardous than was Mr. Hume's or Mr. Lugean-beal's, yet they were charged a much less rate.

"This is only a few samples of what has been done by this Alliance company and its agents around Parsons, and there are scores of similar cases. They seem to have no settled plan on which to write insurance, charging all kinds of rates, issuing a changeable policy, having some of its members to pay more than others; in fact, doing business on a 'happy-go-lucky,' 'hit-or-miss' plan, and it is difficult to understand where all the members are getting the 'mutual' benefits, about which the agents of that company talk so much. Where do you come in on that, brother?

"The farmers have been woefully misled by this company. A close inspection of their policies and methods of doing business will show this, and it is no wonder that 4366 members quit that company in 1903. Look at your annual statement for that year and see if those figures are not right.

["The annual statement of this company for the year 1902 shows at items 6 and 7, in 'Resources,' that 'cash in office and in bank December 31, 1902,' amounted to $1818.07.

"Their statement for the year 1903 shows in item 'I' in 'Income' that 'cash in company's office and deposited in bank December 31, 1902,' amounted to $64,468.07, a discrepancy of $62,650 for the same items and the same time.

"The company made affidavit that EACH of these were correct. You men who are insured in the Alliance company, just get your statements and see if this is correct, and then make up your mind as to which one of these statements the company means to go by, as evidently their affidavit is wrong IN ONE OR THE OTHER.] Ask them to explain.

"For additional facts and figures in regard to the methods employed by this 'wonderfully constructed' Farmers' Alliance Insurance Company, and for the best farm insurance obtainable, call on or address      A. B. WILLIAMS, Parsons, Kan."

The first assignment of error urged is that the court erred in denying the motion to quash the information, for the reason that section 2271 of the General Statutes of 1901, which defines the crime of libel, does not make the defamation of a corporation a crime—that the word "person" does not include a corporation. Section 5759 of the General Statutes of 1901 provides:

"When the term 'person,' or other word, is used to designate the party whose property is the subject of an offense, or against whom any act is done with intent to defraud or injure, the term may be construed to include the United States, this state, or any other state or territory, or any public or private corporation, as well as an individual."

The charge of criminal libel is the charging of an

act done with intent to injure, and the word "person" as used in this section defining the crime includes a private corporation as well as an individual. (*The State v. Herold*, 9 Kan. 194; *The State v. Boogher*, 3 Mo. App. 442.)

Again it is urged that the court erred in not requiring the prosecution to introduce all or none of the "bunco" circular in evidence. The portion enclosed in brackets was offered by the state and was admitted by the court over defendant's objection that the whole, if any, of the circular should be read. The part of the circular relating to different charges for insurance to different policy-holders seems particularly to explain and qualify a portion of the caption, viz., "Startling exposure of the methods employed by the Farmers' Alliance Insurance Company, of McPherson, Kan." These lines of the caption being included in the portion of the circular alleged to be libelous, all matter in the circular relating to the same subject, or in any way qualifying the alleged libelous portion, should have been offered in evidence by the state and admitted by the court. The last paragraph, however, of the circular in no way explains or qualifies any portion thereof which is alleged to be libelous, and as there is a measure of discretion in the trial court in the matter we cannot say the court erred materially in overruling the objection as made.

Among the instructions complained of is the following:

"The circular introduced in evidence headed 'Buncoed' is libelous and contains various libelous charges: First, the word 'bunco' means to swindle or to rob by the game bunco or in a similar manner; and the word 'buncoed' used at the head of the circular in question means that some one had been swindled, robbed, defrauded of his money or property, in the manner stated in the circular. Second, that the conditions of the policy of insurance held by A. J. Higginbottom issued by the Farmers' Alliance Insurance Company had been changed by the company after the policy had

been issued and by reason of such change the said A. J. Higginbottom had been defrauded of one-half the loss under his policy caused by a wind-storm. Third, . . . each of the three charges above mentioned contained in this circular is libelous of itself. . . . In order that the defendant may justify the publication of the circular it must appear from the evidence that each and all of the three charges above referred to are true."

A reading of the circular will disclose that the part of the instruction headed "second" does not contain a fair statement of the portion of the circular to which it refers. The effect of that portion of the circular is that by the terms of the policy held by Mr. Higginbottom the company had a right to change the conditions thereof; that Higginbottom's attention had been called to that fact over a year before; and that on close inspection of his policy he found this to be the fact. This does not charge a wrongful change in the policy, but a rightful change, and does not charge that Higginbottom was defrauded thereby. The instruction is materially erroneous in this respect.

A malicious defamation of a corporation, made public by any printing tending to expose it to public hatred, contempt or ridicule, or to deprive it of the benefits of public confidence, is a libel, and on the trial of a case where a printing of such a nature is introduced in evidence it is proper for the court to instruct the jury that it is libelous if not true. The portion of the circular referred to under the head of "second" is not libelous *per se,* as before indicated. And the instruction of the court that in order to justify the publication it must appear from the evidence that this part of the charge is true is erroneous.

It seems unnecessary to discuss the other errors assigned. The judgment of the district court is reversed, and a new trial ordered.

All the Justices concurring.