CASE 38.—ACTION BY THE COMMONWEALTH AGAINST W. H. SMALL & CO. TO RECOVER A FINE FOR A VIOLATION OF THE PURE FOOD LAW OF THE STATE. —June 11, 1909.

## Small & Co. v. Commonwealth.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Food—Adulteration—Food for Animals—Actions—Sufficiency of Petition.—A petition, in a penal action, which alleged that defendant sold and delivered a product for food for domestic animals, that the product was branded as described, and was guaranteed to contain certain articles, that the label was untrue, and that the product was largely adulterated, etc., states a cause of action under Ky. St. 1909, Sec. 1905a, prohibiting the misbranding or adulteration of any article of food, defining "food" as any article used for food for man or domestic animals, and declaring that an article is misbranded where the label bears any false statement as to the substances of which the article is made, and that an article is adulterated where any substances are mixed with the article so as to injuriously affect the article, etc.

Small & Co. v. Commonwealth.

2.  Corporations—Necessity for Prosecution by Indictment—Actions for Penalties.—Under Cr. Code Prac. Sec. 11, authorizing a penal action for a public offense of which the only punishment is a fine, a penal action lies against a corporation for violating Ky. St. 1909, Sec. 1905a, prohibiting the misbranding or adulteration of food, though the offense is punishable by a fine or imprisonment, since a corporation can only be fined.

3.  Constitutional Law—Discrimination—Criminal Prosecutions—Penal Action Against Corporation. Cr. Code Prac. Sec. 11, authorizing a penal action for a public offense for which the only punishment is a fine, construed to authorize a penal action against a corporation for violating a statute punishable by fine or imprisonment, is valid, though it does not authorize such an action against an individual; the discrimination growing out of conditions that cannot be avoided.

4.  Food—Adulteration—Evidence.—One sold a product for use for food for domestic animals and branded and labeled the same thereby representing that it was made from wheat middlings and corn. The representations were not true and did not fully give the name of the substances contained in the food, which was adulterated with corncob meal. Held, a violation of Ky. St. 1909 Sec. 1905a, prohibiting the misbranding or adulteration of any article of food.

5.  Penalties—Evidence—Sufficiency—Reasonable Doubt.—A jury in a penal action entertaining a reasonable doubt as to whether defendant has been proven guilty should acquit him.

BARNES & ANDERSON for appellant.

The Court's instruction were erroneous.

1.  They did not limit the jury to the representations printed on the label or tag on the package.

2.  They did not require the jury to believe from the evidence, to the exclusion of a reasonable doubt that defendant unlawfully committed the offense.

3.  They did not require the jury to believe that the food product was adulterated within the meaning of Section 3608.

4.  The punishment for a violation of Sec. "1905a" is a fine not to exceed $100.00, or imprisonment for not more than 50 days or both fine and imprisonment. The Court directed the jury to fix defendant's punishment, if guilty, "in a sum not less than $10.00, nor more than $100.00." Which was contrary to law.

5.  The petition was not sufficient to support the verdict or judgment, the proceeding, being unauthorized, was void and de-

Small & Co. v. Commonwealth.

fendant's motion for judgment against the verdict notwithstanding the verdict for these reasons should have prevailed. Civil Code, Sec. 386.

### AUTHORITIES CITED.

Kentucky Statutes, 1903, Sec. 1905a; Statutes of Kentucky (Russell 1909) Sections 3606, 3607, 1608, and 3144; Criminal Code, Sec. 386; Hill v. Commonwealth, 17 Kentucky Rep. 1135.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Assistant Attorney General for appellee.

It cannot be seriously contended that this act of the Legislature is unconstitutional whatever. The Legislature certainly had the authority to enact this law for the protection of any and all interests that it might affect. Here is a foreign corporation selling its products in this State, which products are not natural products at all, but an adulteration, a concoction, a mixture, manufactured more for gain and profit to the manufacturers than benefit arising to the consumers. It cannot be denied that a straight wheat and corn mixture would be beneficial as a stock food, but when this is adulterated with large quantities of corn cob meal and other cheap elements that have no value whatever as a food and moreover are injurious to stock, it is time for this law to be enforced.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This criminal proceeding in the form of a penal action was instituted by the Commonwealth of Kentucky against the appellant, a foreign corporation, to recover a fine for an alleged violation of the pure food law of the state. The substantial averments of the petition are: That ''on the —— day of ——, 1907, the defendant sold and delivered to F. M. Allen, in Ohio county, Ky., 100 pounds of food product marked 'XXX Mixed Feed,' and guaranteed its analysis to be as follows, viz: 'Protein 13.81 per cent.; fat 3.15 per cent.; made from wheat middlings, corn.' The said article was sold and used for food

for domestic animals and was branded as above set out, containing a label with the words hereinbefore quoted branded thereon, which statement was untrue and did not fully give the name of the substances entering into its composition, and the said article was largely adulterated with corncob meal and contained only 12 per cent. protein, all of which reduced its strength and lowered its quality. Wherefore the plaintiff prays judgment against the defendant, W. H. Small & Co., for the sum of $100 as provided in the Kentucky Statutes, section 1905a, for its costs, herein expended and for all proper relief.'' Summons having been executed upon an agent of W. H. Small & Co. in Ohio county, it appeared and entered a general demurrer to the petition, but the demurrer does not appear to have been acted upon by the court; and at the same time, without waiving its demurrer, filed a written plea of not guilty. The case coming on for trial, a jury was impaneled and, after hearing the evidence and being instructed, a verdict was returned in favor of the Commonwealth for $100.

The errors relied upon for a reversal are: (1) The admission of incompetent evidence; (2) failing to instruct the jury to find a verdict of not guilty; (3) error in the instructions given.

The prosecution was under an act of March 13, 1908, now section 1905a of the Kentucky Statutes of 1909. The sections of the act necessary to note are:

"Section 1. That it shall be unlawful for any person, persons, firm or corporation within this state to manufacture for sale, produce for sale, expose for sale, have in his or their possession for sale or to sell any article of food, or drug which is adulterated or misbranded within the meaning of this act; and any

person or persons, firm or corporation who shall manufacture for sale, expose for sale, have in his or their possession for sale or sell any article of food or drug which is adulterated or misbranded within the meaning of this act shall be fined not less than ten dollars nor more than one hundred dollars, or be imprisoned not to exceed fifty days or both such fine and imprisonment. Provided, that no article of food or drug shall be deemed misbranded or adulterated within the provisions of this act when intended for shipment to any other state or country, when such article is not adulterated or misbranded in conflict with the laws of the United States; but if said article shall be in fact sold or offered for sale for domestic use or consumption within this state, then this proviso shall not exempt said article from the operations of any of the other provisions of this act.''

''Section 2. That the term 'food,' as used in this act, shall include every article used for or entering into the composition of food or drink for man or domestic animals, including all liquors.''

''Section 3. For the purpose of this act, an article of food shall be deemed misbranded: (1) If the package or label shall bear any statement purporting to name any ingredient or substance as not being contained in such article, which statement shall not be true in any part; or any statement purporting to name the substances of which such article is made, which statement shall not give fully the name or names of all substances, contained in any measurable quantity. * * *''

''Section 4. For the purpose of this act, an article of food shall be deemed to be adulterated: (1) If any substance or substances be mixed or packed with it

so as to reduce, lower or injuriously affect its quality or strength.   (2) If any substance is substituted wholly or packed with it so as to reduce, lower or injuriously affect its quality or strength.  (3) If any valuable constituent of the article has been wholly or in part abstracted; or if the product is below that standard of quality represented to the purchaser or consumer.''

''Section 8. It shall be the duty of the director of the Kentucky Agricultural Experiment Station, or under his direction, the head of the division of food inspection of the said station, to make, or cause to be made, examinations of samples of food and drugs manufactured or on sale in Kentucky at such time and place and to such extent as he may determine.* * * The director of said experiment station is hereby empowered to adopt and fix the methods by which the samples taken under the provisions of this act shall be analyzed or examined, and to adopt and fix standards of purity, quality or strength, when such standards are necessary or are not specified or fixed herein or by statute.  * * *  ''

''Section 12. When any manufacturer  shall offer any article of food or drug for sale in the state he shall file with the director of the said station, when requested by him, the name of the brand, the name of the product, the place of its manufacture or preparation, and a true copy of all labeling used thereupon. Failure to so file within thirty days shall be punished as provided in section one of this act.''

''Section 13. In all prosecutions under this act, the courts shall admit as evidence a guaranty which has been made to the holder of the guaranty by any manufacturer or wholesaler residing in this state, to the

effect that the product complained of is not adulterated or misbranded within the provision of this act.''

It will be observed that this statute prohibits the misbranding or adulteration of ''any article of food or drug,'' and defines the meaning of the words ''food,'' ''misbranding,'' and ''adulteration.'' The petition stated that the food was both misbranded and adulterated. Whether or not two offenses—so intimately connected as are the adulteration and misbranding of the same article as in this case, may be joined in an indictment or penal action, we do not deem it necessary to decide, as no motion to require the Commonwealth to elect was made; but, passing this, there can be no question that the petition furnished the defendant in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what was intended, information of the charge preferred against it. It could not, after reading the petition, be mistaken as to the offense or offenses the Commonwealth accused it of having committed. The penal action was brought under section 11, Cr. Code Prac., which provides that: ''A public offense, of which the only punishment is a fine, may be prosecuted by a penal action in the name of the Commonwealth or in the name of an individual or corporation, if the whole fine be given to such individual or corporation. The proceedings in penal actions are regulated by the Code of Practice in civil actions.'' And as the statute punishing the offense charged declares that any person found guilty ''shall be fined not less than ten dollars nor more than one hundred dollars or be imprisoned not to exceed fifty days or both such fine and impris-

Small & Co. v. Commonwealth.

ornment.'' It is insisted: That a violation of the statute can not be prosecuted by a penal action; that under the Code only those offenses for which the only punishment is a fine may be prosecuted by a penal action, and as the punishment prescribed in the statute might be either a fine or imprisonment, or both, the prosecution should have been by indictment or by information, as authorized by section 1141 of the Kentucky Statutes (Russell's St. Sec. 3146). If the proceeding was against one or more persons, the objection would be well taken, as the individual if convicted, could be both fined and imprisoned; but, as the proceeding was against a corporation that could not be imprisoned, it is manifest that the only punishment that could be inflicted was a fine. The Commonwealth's Attorney recognized this fact in drawing the petition, and only prayed for judgment in the sum of $100. He did not ask that the imprisonment feature of the statute be applied, because it would have been idle to do so. If the only punishment that can be imposed upon the defendant is a fine, the offense may be prosecuted by a penal action, although the statute prescribes both fine and imprisonment as the punishment. The Code provision concerning penal actions should be given a reasonable construction, to carry out the legislative intent in its enactment, which was that offenses might be prosecuted by penal action when a fine is the only punishment prescribed by statute as a penalty for the offense or when the defendant can not be subjected to any punishment other than a fine. That an individual guilty of an offense may be both fined and imprisoned, and a corporation likewise guilty only fined, does not affect the validity of the statute. The apparent discrimination grows out of conditions

that can not be avoided, and the corporation that is favored by the discrimination can not complain.

On each sack of the food that W. H. Small & Co. sold was a paper label or tag, with the following printed matter on it:

> $100 penalty for using this tag second time.
>
> 100 pounds
> XXX MIXED FEED
> Made by
> W. H. Small & Co.,
> Evansville, Ind.
> Guaranteed Analysis.

|  | Per cent. |
|---|---|
| Protein | 13.81 |
| Fat | 3.15 |

> Made from:
>
> Wheat Middlings.
> Corn.

The above is the manufacturer's or dealer's guarantee and the sale of this package is authorized subject to the feed stuffs law.

> M. A. Scovell, Director,
> Kentucky Agricultural Experiment Station,
> Lexington, Kentucky.

The evidence established that a merchant, named Allen, in Ohio county, bought several sacks of this feed stuff, and that he sold a sack of it with the tag attached to a farmer named Dr. W. M. Warden, who wanted the food for a hog. Finding that his hog would not eat the food, Dr. Warden wrote to M. A. Scovell, the director of the experiment station, for information looking to an analysis of the food. In response to this letter, the director sent J. W. McFarland, state inspector of mill feeds, fertilizer and field seed, to Dr. Warden, and McFarland obtained from Dr. Warden a sample of the feed stuff he had purchased from Allen; the sample being taken from the sack in which it was when purchased by Warden, and that had on it at the time the tag or label before mentioned. This sample McFarland sealed and sent

by express to the experiment station. McFarland further testified that W. H. Small & Co. had made application, which was granted, to the experiment station for license to do business and handle feed stuffs in Kentucky, and tendered with his evidence the original application, which reads as follows:

Application for License to Sell Concentrated Commercial Feeding Stuffs in Kentucky.

M. A. Scovell, Director, Lexington, Ky.:

Application is hereby made to sell concentrated commercial feeding stuffs in Kentucky during the year ending December 31, 190—, with names of brands, name and address of the manufacturer, net weight of package, guaranteed analysis, and names of ingredients from which it is made.

| Name of Brand | Name of Manufacturer | Net Weight of Package. Lbs. | Guaranteed Analysis | | Name of Ingredients from which It is Made |
| | | | Protein. | Fat. | |
| XXX Mixed Feed | W. H. Small & Co. | 100 | 13.81 | 3.15 | Wheat Middlings and Corn |

[Signature]　W. H. Small & Co.,
Evansville, Ind.

June 19, 1907.

H. D. Spears, state feed inspector, testified: That he was a graduate in chemistry and had been connected with the experiment station of Kentucky for more than a year; that he made an analysis of the sample sent to the station by McFarland, and the analysis showed 12 per cent. protein, 3.56 per cent. fat, and 30 per cent. corncob. He further testified that the food stuff, if made according to the application and in conformity to the label, should only have contained corn and wheat product and no cob; that the cob had no food value whatever. In short, the evidence in behalf of the Commonwealth— and no testimony was introduced for the defendant—proved

that upon the application of W. H. Small & Co. the experiment station issued to it license to sell a food product made of wheat middlings and corn, guaranteed to contain 13.81 per cent. of protein, and 3.15 per cent. fat, and that under authority of this license Small & Co. fraudulently imposed upon the public a product that did not contain the percentage of protein guaranteed by it, and that did contain 30 per cent. of corncob, a substance entirely worthless for food purposes. The evidence conclusively established that the sample analyzed at the experiment station was taken from a sack of the food stuff sold by Small & Co. and labeled with one of the labels or tags furnished it by the experiment station. The evidence fully supported the charges in the petition that the food was both misbranded and adulterated.

The only instructions given were these: "No. 1. If the jury believe from the evidence, to the exclusion of a reasonable doubt, that the defendant sold to one F. M. Allen, in Ohio county, in the year 1907, and before the 19th of October, 1907, 100 pounds, or any less number of pounds, of food product marked 'XXX Mixed Feed,' sold for and to be used for food for domestic animals, and branded and labeled as above set out, and represented it as made from wheat middlings and corn, and that said brand and representations were false and untrue, and did not truly and fully give the name of the substances contained in said feed, and said feed was adulterated with corncob meal, then the jury should find for the plaintiff in a sum not less than $10 nor more than $100. No. 2. If the jury entertained a reasonable doubt from the evidence as to whether the defendant has been proven guilty, they should acquit it." These instruc-

tions contain the whole law of the case, and under the law and the facts the jury did not make any mistake in finding the defendant guilty.

Wherefore the judgment is affirmed.