THE STATE OF KANSAS, *Appellant,* v. THE BELLE SPRINGS CREAMERY COMPANY, *Appellee.*

No. 17,036.

SYLLABUS BY THE COURT.

1. WORDS AND PHRASES—*"Person"—Corporations.* The word "person," being the second word in section 9752 of the General Statutes of 1909, includes a corporation as well as a natural person.

2. INFORMATION—*Statutory Language—Negativing Statutory Exceptions.* The complaint set forth in this case charges the offense substantially in the language of section 9752 of the General Statutes of 1909, except as to the proviso at the end of such section, and is not defective by reason of the failure to negative such proviso.

3. WEIGHTS AND MEASURES—*Penalty—Uniform Operation—Due Process of Law—Police Regulation.* Paragraphs 9751 and 9752 of the General Statutes of 1909 are not unconstitutional and void as being repugnant to either section 17 of article 2 of the constitution of the state of Kansas or to the fourteenth amendment to the constitution of the United States.

Appeal from Saline district court. Opinion filed November 5, 1910. Reversed.

STATEMENT.

THIS is a prosecution commenced before D. R. Wagstaff, a justice of the peace of the city of Salina, in Saline county, Kansas, against P. F. Edquist and the Belle Springs Creamery Company, a corporation. Defendant Edquist filed his motion to quash the amended complaint on February 9, 1910, which motion was by

Justice Wagstaff denied. Thereafter trial was had, Edquist was acquitted, and the creamery company was convicted. The corporation appealed its case to the district court, and there refiled the motion to quash. The district court sustained the motion, and the state appeals.

The prosecution was commenced under sections 14 and 15 of chapter 264 of the Laws of 1909 (Gen. Stat. 1909, §§ 9751, 9752), which provide:

"SEC. 14. A print or package of butter shall contain sixteen ounces avoirdupois, and when a print or package of butter containing less than sixteen ounces avoirdupois shall be sold its net weight shall be disclosed by the seller to the buyer, or a statement of the net weight be made upon a label attached thereto.

"SEC. 15. A person who, by himself or by his servant or agent, or as the servant or the agent of another, uses a weight, measure, balance or measuring device that is false and does not conform to the authorized standard for determining the quantity of any commodity or article of merchandise, or sells or exposes for sale less than the quantity which he represents, or sells or offers for sale commodities in a manner contrary to law, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined in a sum of not less than five dollars nor more than one hundred dollars, or by imprisonment in the county jail for not more than ninety days, or by both such fine and imprisonment. He shall also be liable to the injured party in double the amount of the property wrongfully taken or not given, and ten dollars in addition thereto, to be recovered in any court of competent jurisdiction. The selling and delivery of any commodity or article of merchandise shall be *prima facie* evidence of representations on the part of the vendor that the quantity sold and delivered was the quantity bought by the vendee. There shall be taken into consideration the usual and ordinary leakage, evaporation or waste that there may be from the time the package is filled by the vendor until the selling of the same; a slight variation from the stated weight, measure or quantity for individual packages is permissible, provided this variation is as

often above as below the weight, measure or quantity stated."

The first count of the amended complaint reads:

"A. E. Ice, being duly sworn according to law, on oath, says: That the said defendant, on or about the 3d day of September, 1909, in the said county of Saline and state of Kansas, then and there did unlawfully expose for sale and sell and deliver to D. W. Witwer and J. C. Stevens, partners doing business under the firm name and style of Witwer & Stevens, one certain print and package of butter, which said print and package of butter, after taking into consideration the usual and ordinary leakage, evaporation and waste from the time the same was filled until it was sold and exposed for sale as aforesaid, did not then and there weigh sixteen ounces avoirdupois, and which said print and package of butter did not then and there have a label attached thereto with the net weight thereon, and the said defendant did not then and there disclose the net weight of said print and package of butter so sold and exposed for sale as aforesaid to the buyer thereof, and that the said defendant, the Belle Springs Creamery Company, is a corporation duly organized and doing business under the laws of the state of Kansas, contrary to the statutes in such cases made and provided and against the peace and dignity of the state of Kansas."

Each of the other counts of the complaint is similar to the first count, except that other and different sales are alleged in each count from that specified in the first count.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, *Charles D. Shukers,* special assistant attorney-general, and *Frank T. Knittle,* county attorney, for the appellant.

*G. W. Hurd, Arthur Hurd,* and *Ferry, Doran & Magaw,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: A number of objections made to the complaint are argued in the briefs together, and are, in substance, that the complaint is not sufficiently definite and certain as to the facts constituting the alleged offense therein charged. It is especially urged that the statute establishes a certain weight for a print or package of butter, and that the complaint does not inform the accused whether it was a print or a package which is alleged to have been sold short of such weight. It is a matter of common knowledge that formerly butter was retailed in prints of about one pound weight each; that more recently, for cleanliness and attractiveness, butter has been put up and sold in packages of about the same weight; and that at and before the passage of the act both print and package were generally understood as a measure of the same amount in weight —one pound. The legislature, in passing the act of which the quoted sections are a part, is presumed to have used the terms in accordance with common usage. In fact in the latter part of section 15 the word "package" is used in lieu of "print or package," and the word "packages" in lieu of "prints or packages."

The act is entitled "An act concerning weights and measures and the regulation thereof." (Laws 1909, ch. 264.) Section 14 establishes the size of a measure of butter, whether the measure be called a print or a package. The words are used synonymously as to the quantity designated thereby. One measure was established under two well-recognized names. As in the sale of potatoes by measure, an abuse had arisen by the use of a measure of smaller content than was indicated to the public by the name of the measure used. To correct this abuse the statute in question was enacted. The objection is based upon the assumption that two different measures are designated by the act. The objection therefore is not tenable.

Several objections are urged which appear to be criticisms of the language of the complaint, even where it follows the exact language of the statute in defining the crime. These objections we will not discuss *seriatim.* Suffice it to say that the statute is not susceptible of some of the constructions attemped to be placed upon it, and while probably the crime is not defined therein as clearly as it might be, yet the definition seems to be intelligible, and the complaint follows closely the language thereof. It does not negative the proviso, or exception, in the last sentence of the section, of which we will speak later.

The objection that the complaint is bad for duplicity is completely answered in the case of *The State v. Sherman,* 81 Kan. 874. The exposing for sale and selling, as charged, appears to have been simultaneous and each as a part of one act.

Again, it is contended that even if the statute recites facts which constitute the offense, and if, as has been repeatedly held by this court, the complaint is sufficient so far as it follows the language of the statute in describing the offense, still this complaint is bad in that it does not negative the exception or provision contained in the last sentence of section 15, which reads:

"A slight variation from the stated weight, measure or quantity for individual packages is permissible, provided this variation is as often above as below the weight, measure or quantity stated." (Laws 1909, ch. 264, Gen. Stat. 1909, § 9752.)

This is in fact an independent sentence, although as punctuated in the statute it is separated only by a semicolon from the preceding sentence. It forms no part of the definition of the offense charged, but is a proviso, or, at most, an exception thereto. The provision simply excepts sales where the variation in weight is slight and is as frequently above as below the weight expressly stated or the weight implied in the absence of the required label. In such case it is not necessary to

negative the exception. (See *The State of Kansas v. Thompson,* 2 Kan. 432; *City of Kansas City v. Garnier,* 57 Kan. 412; *The State v. Thurman,* 65 Kan. 90; *The State v. Buis,* ante, p. 273.)

The more serious contentions in this case are: (1) That the statute in question is not in terms made applicable to corporations; (2) If intended to apply to corporations it is in violation of section 17 of article 2 of the constitution of Kansas, for the reason that it can not have a uniform operation throughout the state, the penalty prescribed being a fine or imprisonment in jail, or both, in the discretion of the court; (3) That the sections of the act in question are repugnant to the fourteenth amendment to the constitution of the United States in depriving persons of liberty and property without due process of law, etc., the defendant being a resident of Kansas and of the United States.

As to the first objection it is practically conceded by the appellee that if the statute in question had expressly or by clear intendment been made applicable to corporations and had provided for a fine only it would have been valid; also, that it devolves upon this court to determine what was the intention of the legislature in enacting the law—as to whether or not it was to apply to corporations. It was formerly held that a corporation could only be indicted for a failure to perform some duty, and not for malfeasance, but it is now generally held that corporations may be indicted for malfeasance or misfeasance, and may be civilly held responsible for the acts of their officers and agents. In some of the states this is as far as the law has progressed. In some other states it is held that a corporation may be held criminally responsible for an act denounced by the statute, which does not include, as a necessary ingredient, wrongful intent, it being in some cases remarked that a corporation, having no soul, can not have a criminal intent. As early as 1854 Mr. Justice Bigelow, in the opinion in the case of *Common-*

The State v. Creamery Co.

wealth v. *Proprietors of New Bedford Bridge,* 68 Mass.
339, said:

"The indictment in the present case is for a nuisance.
The defendants contend that it can not be maintained
against them, on the ground that a corporation, al-
though liable to indictment for nonfeasance, or an omis-
sion to perform a legal duty or obligation, are [is]
not amenable in this form of prosecution for a mis-
feasance, or the doing of any act unlawful in itself and
injurious to the rights of others.   There are dicta in
some of the early cases which sanction this broad doc-
trine, and it has been thence copied into text-writers
[textbooks], and adopted to its full extent in a few
modern decisions.   But, if it ever had any foundation,
it had its origin at a time when corporations were few
in number, and limited in their powers and in the pur-
poses for which they were created.   Experience has
shown the necessity of essentially modifying it; and the
tendency of the more recent cases in courts of the
highest authority has been to extend the application of
all legal remedies to corporations, and assimilate them,
as far as possible, in their legal duties and responsibili-
ties, to individuals.   To a certain extent the rule con-
tended for is founded in good sense and sound principle.
Corporations can not be indicted for offenses which
derive their criminality from evil intention, or which
consist in a violation of those social duties which ap-
pertain to men and subjects.   They can not be guilty
of treason or felony; of perjury or offenses against the
person.   But, beyond this, there is no good reason
for their exemption from the consequences of unlawful
and wrongful acts committed by their agents in pur-
suance of authority derived from them.   Such a rule
would, in many cases, preclude all adequate remedy,
and render reparation for an injury committed by a
corporation impossible, because it would leave the only
means of redress to be sought against irresponsible
servants, instead of against those who truly committed
the wrongful act by commanding it to be done.   There
is no principle of law which would thus furnish im-
munity to a corporation.   If they commit a trespass
on private property, or obstruct a way to the special
injury and damage of an individual, no one can doubt
their liability therefor.   In like manner, and for the
same reason, if they do similar acts to the inconvenience

and annoyance of the public, they are responsible in the form and mode appropriate to the prosecution and punishment of such offenses. . . . If, therefore, the defendants have been guilty of a nuisance, by obstructing unlawfully a navigable stream, an indictment may well be maintained against them." (pp. 345, 346.)

Since the decision in that case the law has rapidly developed in favor of holding corporations criminally responsible for the commission of acts denounced as criminal by statutes, especially where a specific intent is not an essential ingredient of the crime. This has been held in several federal decisions, and by decisions in the courts of last resort in several of the states. In *United States v. New York Herald Co.*, 159 Fed. 296, it was held:

"A corporation has capacity to commit the crime of mailing obscene, nonmailable matter, prohibited by Rev. St. § 3893, as amended (U. S. Comp. St. 1901, p. 2658." (Syllabus.)

A demurrer to the indictment in that case was overruled, although the penalty prescribed by the statute was a fine or imprisonment at hard labor, or both. It was further held in that case:

"Rev. St. § 3893, as amended (U. S. Comp. St. 1901, p. 2658), describes certain nonmailable matter, and provides that any person who shall knowingly deposit, or cause to be deposited for mailing or delivery, anything declared by the section to be nonmailable, shall for each offense be fined, on conviction, or imprisoned at hard labor, or both, etc. *Held*, that such section was applicable to a corporation organized for the purpose of publishing a newspaper, and that proof of the mailing by such corporation of its newspaper, containing obnoxious matter, was sufficient to show that the corporation had knowledge thereof." (Syllabus.)

It was said in *People v. Palermo Land and Water Co.*, 4 Cal. App. 717:

"There is no reasonable foundation in the nature of things or such intrinsic difference between corporations and natural persons, of which I am aware, that requires the application of a measure of jurisdiction over

an offense committed by a corporation different from that to be invoked where an individual is charged with the same or similar crime."   (p. 721.)

It was said in Southern Express Co. v. State, 1 Ga. App. 700:

"The responsibility of corporations for violation of penal laws, though developed by gradual evolution, is well settled and necessary.

"A corporation can be guilty of the offense of furnishing liquors to a minor, if such liquors be delivered to a minor by the agent of the corporation in the course of its business, or if such agent knowingly permits such delivery by another."   (Syllabus.)

Among the states upholding the doctrine that a corporation may be indicted for misfeasance and for a violation of acts prohibited by statute, cited in section 2138 of volume 12 of the Century Digest, are Illinois, Kentucky, New Jersey, New York, Ohio and Tennessee. Other states, notably Indiana and Maryland, hold to the ancient doctrine that a corporation can not be indicted for misfeasance.   In several of the states cited there is a statutory provision that the word "person," where used in the criminal statute, includes corporations. There is no such provision in this state, and we do not find any decision in this state which so holds, although in the case of The State v. Williams, 74 Kan. 180, it was said that the word "person," used in section 270 of the crimes act, referring to the person libeled, includes a corporation.   The question may well be asked, If the word "person" used to designate one libeled includes a corporation, why it should not also include the corporation if the same word were used to designate the one guilty or supposed to be guilty of the libel?   The statute in question (§ 15) by its language, "a person who, by himself, or his servant or agent, or as the servant or the agent of another, uses," etc., seems almost to suggest that the word "person" was intended to include a corporation.   The statute was enacted to prevent a particular abuse, and it is a matter of common knowledge

in the state that large corporations as well as individuals were practicing the abuse of selling butter by print and package containing less weight than is required by the act, and, it may be said, of less weight than the public generally understood such prints or packages to contain. That an individual who after the passage of the act should expose for sale or sell a print or package of less than the prescribed weight should be guilty of a crime, and that a corporation might conduct the practice with impunity, seems revolting to all ideas of justice; and we hold, in accordance with the general trend and development of the law, that the word "person," being the second word in section 9752 of the General Statutes of 1909 (Laws 1909, ch. 264, § 15), as there used, includes a corporation.

As to the second objection, that the statute if applied to corporations can not have a uniform operation in the state, the question was involved in the New York Herald case, supra, but seems not to have been considered of sufficient importance to merit discussion. In *W. H. Small & Co. v. Commonwealth*, (Ky. 1909) 120 S. W. 361, it was said:

"That an individual guilty of an offense may be both fined and imprisoned, and a corporation likewise guilty only fined, does not affect the validity of the statute. The apparent discrimination grows out of conditions that can not be avoided, and the corporation that is favored by the discrimination can not complain." (p. 363.)

It is true only the penalty of a fine can be applied to a corporation; whether the additional penalty of imprisonment in the jail should ever be applied to an individual is a matter that rests in the discretion of the court. There are many other instances where the same question will be raised; for instance, a corporation may be guilty of contempt of court and can only be fined, while an individual may be fined and imprisoned. (1 Clark & Marsh. Priv. Corp. § 257; *Telegram Newspaper Co. v. Commonwealth*, 172 Mass. 294.)

The third contention, that sections 14 and 15 in ques-· tion are void because in violation of the fourteenth amendment to the constitution of the United States, is likewise untenable. They are upheld as police regula- tions, and such regulations of weights and measures have stood upon the statute books of this state prac- tically during the entire existence of the state, and like- wise in other states of the Union.

We conclude that the motion to quash the complaint should not have been sustained. The judgment is therefore reversed, and the case is remanded with in- structions to deny the motion and proceed in accordance with the views herein expressed.