## Thornton v. Esco, et al.

### Bill to Enforce Vendor's Lien.

(Decided February 6, 1913.   61 South.·255.)

1. *Husband and Wife: Wife as Surety; Payment of Husband's Debt.*—While a wife may not, under our statute, become surety for the debts of her husband, either directly or indirectly, yet she will not be heard in equity to impeach a fair and free conveyance made by her in absolute discharge of the husband's debt.

.2. *Vendor and Purchaser: Lien: Enforcement.*—The evidence considered and it is held that it fails to show an indebtedness of the purchaser to the vendor in such a sense as to sustain the burden on complainant to show such indebtedness.

3. *Same.*—Where the suit was to enforce a vendor's lien on property that had been sold and transferred by the purchaser' a denial by the purchaser's transferree of any indebtedness due from the original purchaser to his vendor on account of the purchase money raises an issue of fact to be determined by the appellate court on consideration of the evidence, in which no weight can be given to the decision of the Chancellor (sec. 5955, Code 1907).

APPEAL from Chilton Chancery Court.
Heard before Hon. W. W. WHITESIDE.

Bill by Lula Esco and others against Emmett L. Thornton, to enforce vendor's lien. From a decree for complainants respondents appeal. Reversed, rendered in part and remanded.

J. M. CHILTON, for appellant. Under the circumstances of this case, the burden was on the complainant to prove by clear and satisfactory evidence the existence of a debt from their vendee.—*Adams v. Adams*, 127 Ala. 518; 14 Enc. of Evid. 135. There was a variance

between the allegations and the proof.—*Kyle v. Bellinger,* 79 Ala. 516. Thornton was a purchaser for value without notice.—*Alston v. Marshall,* 112 Ala. 638. There being no record of the mortgage or other indebtedness, the burden of proving notice rests on the complainant.—*Center v. P. & M. Bank,* 22 Ala. 743; *Nolen v. Gwyn,* 16 Ala. 725; *Vann v. Mayberry,* 100 Ala. 438. There is no inhibition against the right of the wife to sell her property in absolute payment of her husband's debt.—*Glidden v. Powell,* 108 Ala. 621; *Hollingsworth v. Hill,* 116 Ala. 184; *Pratt Co. v. McLean,* 135 Ala. 468. Every negotiable instrument is deemed prima facie supported by a valuable consideration, and every signature thereto to be a party for value.—Section 4981, Code 1907. There is no evidence that Mrs. Glenn was a surety for her husband.—*Gafford v. Speaker,* 125 Ala. 498. Under the pleading no lien was created.—4 Mayf. 1097. There can be no merger of estates where such a result would be productive of injustice to the mortgagee.—27 Cyc. 1381. The defense of coverture being a personal one, the grantee of a married woman cannot avoid her deed on the ground that she was incompetent to convey, and her creditors cannot claim any rights by reason of her disabilities as such.—*Strauss v. Glass,* 108 Ala. 546; *Carter v. Fisher,* 127 Ala. 63; *Moore v. Price,* 116 Ala. 249; *Scarbrough v. Borders,* 115 Ala. 440; 21 Cyc. 1333.

W. A. GUNTER, for appellee. The party called to account cannot question how the proceeds of a collection from him is divided between the adverse parties.—*Green v. Casey,* 70 Ala. 418; *Nix v. Winters,* 35 Ala. 309; *McLane v. Riddle,* 19 Ala. 180; 1 Daniels Ch. 190, et seq. As Thornton had dealings only with Glenn, the signature of Glenn's wife to the notes and mortgages could only operate and prima facie did operate as a

mere surety for the debt of her husband, and were nulli-
ties.—Sec. 4497, Code 1907, and authorities cited; Rich-
ardson v. Stephens, 114 Ala. 238.

SAYRE, J.—The bill in this case was filed by appel-
lees to foreclose an alleged vendor's lien against a cer-
tain 152-acre tract of land.   Esco had sold the land to
Glenn and wife, and they are parties defendant, but
they in turn had sold to Thornton, and he is the real
defendant.   Glenn had been indebted to Thornton, and
his indebtedness had been secured by notes and a mort-
gage, in the execution of which his wife had joined.   In
the court below it was correctly held that Thornton had
taken his mortgage in good faith, and without notice
of complainant's alleged lien, and a decree was ren-
dered, on Thornton's cross-bill, foreclosing as against
Glenn's interest; but the mortgage, so far as it purport-
ed to affect Mrs. Glenn's undivided interest, was held
void, for the reason that it had been given to secure the
debt of her husband, and as to it the lien claimed was
affirmed and enforced.   After the mortgage debt had
fallen due in part without being paid, Thornton took a
deed of the tract in satisfaction of the entire debt due
him, and he relies upon this deed also to defeat the lien
claimed by appellees.   The wife, though she cannot, di-
rectly or indirectly, become the surety for her husband,
cannot rely upon the marital relation for the impeach-
ment of her own free and fair conveyance made in abso-
lute discharge and payment of his debt.   But Thornton
admits that, in the interval between his mortgage and
his deed, he was told by Esco of his claim that the
Glenns had never paid any part of the purchase money
claimed by Esco.   He would, however, avoid the claim
to relief against him in respect of Mrs. Glenn's interest
in the property, as he would in respect of Glenn's inter-

est, had not that been rendered unnecessary by the decree, by a denial which goes to the root of the entire case for complainants—by a denial of any indebtedness due from Glenn to the complainants on account of purchase money. This contention raises an issue of fact to be determined on consideration of the evidence; no weight being given to the decision of the chancellor.— Code, § 5955.

A statement to the last detail of the considerations which have led us to conclude that appellant's contention in respect to the question of fact to which we have referred ought to prevail would involve an unprofitable consumption of time and space. We have, however, thought it proper to outline our reasons.

The deed of Esco and wife, conveying the 152-acre tract to Glenn and wife, was executed on October 15, 1906, and recited a consideration of $1,500, receipt whereof was acknowledged. Grantors took no evidence whatever of any indebtedness. On the same date the Glenns conveyed to the Escos a tract of 340 acres on a recited consideration of $1,500. Esco was a merchant, and Glenn at that time was indebted to him in a sum closely approximating the consideration recited in each of these conveyances. We think there can be no doubt (there has been at best but a feeble effort to deny the proposition) that these two properties were of about the same value, acre for acre—that is, they were worth about $10 an acre—so that the value of the 152-acre tract was about equal to its recited purchase price, while the other tract was worth something more than twice as much. Now appellant insists that the transaction here shown was an exchange of lands, and that Glenn's previous indebtedness to Esco was satisfied in the trade as representing the difference in value between the two tracts. But the parties to that transaction

testify that the two deeds, though executed at the same
time, had no relation to each other, having been deter-
mined upon at different times and on independent and
unrelated considerations; that the Glenns conveyed
their 340-acre homestead tract in order to pay the in-
debtedness of $1,500 on account of merchandise, in pur-
suance of an agreement had months before; and that the
deed of the 152-acre tract was made to the Glenns on
the latter's promise to pay the other $1,500, no security
or evidence of the debt being taken—a version of the
facts lacking in appeal to the credence of men habituat-
ed to the observation of such transactions between par-
tise so related and circumstanced.  On its face this
transaction, as evidenced by the memorials prepared at
the time, consists entirely with appellant's theory of
the facts; while the improbability of the explanation
offered by appellees, in view of the well-established, rela-
tive value of the two tracts, must add considerably to
the burden of proving their case put upon them by the
general rule of law.  We would not refer to interest
alone, if that were all, as affecting peculiarly the deposi-
tions of the complainants; for to some degree that con-
sideration affects the testimony of every witness in mat-
ters involving his interest.  Other indications must be
observed in connection.  The case for complainants
(appellees) rests mainly upon the testimony of Esco
and Glenn, though their wives corroborate them in
part.  These parties claim that the sale of the 340-acre
tract was agreed upon and Glenn credited upon his
indebtedness in December or January preceding the
transaction in question, but that the making of the deed
was delayed because Mrs. Glenn was sick at the time,
and would not sign afterwards.  The testimony of the
witness Gulledge goes to show satisfactorily that the
parties probably had in mind at that time a purchase of

the 340 acre tract by Esco, and that as part of the bargain, Glenn was to be relieved of his indebtedness. But there is nothing in the evidence of this witness and those others who corroborate him on this point to show the full nature or value of the consideration to be paid, nothing to exclude the idea that the parties then contemplated just the transaction evidenced by the face of the memorials made in the succeeding October. And when Esco was being examined a short time after the October transaction in an ·involuntary proceeding in bankruptcy that had been brought against him, he said that on the occasion of the October transaction he had directed his bookkeeper to close Glenn's account on his books by a credit of the land sale, which was done, as the books showed, in words and figures as follows: "Land deed for $1,500.00 less account of $1,465.57 and rent to balance ledger, $34.43." Complainants say that notes and a mortgage were to be taken for the purchase money of the 152-acre tract, but that none were taken, though the deed was delivered, because, they explain, the negotiation covered a large part of the day, during which Esco took Glenn to look over the place some three or four miles away, and as evening came on Mrs. Glenn had to go home on account of the sickness of some of the children. But this explanation is itself in part improbable, and is discredited by the testimony of C. L. Brown, who seems to be wholly disinterested. Brown, who had a way of writing deeds and papers for people in the neighborhood, testified that the parties to this transaction, in the forenoon, requested him to prepare deeds to both tracts, bringing him at the time deeds from which he was to draw descriptions of the lands; that they stated the considerations as they are stated in the deeds; that they came back after several hours, when, after some further delay, the draft of the deeds

was finished, and they were delivered to them, and by them taken over to the notary's, where their wives were waiting; but at no time did they mention any notes or mortgage to secure deferred payments, nor was any mention made of them in the hearing of the notary before whom the deeds were executed. The only explanation of this uncontradicted fact which would bring it and the delivery of the deeds without the notes and mortgage, or the mention of them, into accord with the customary and reasonable course of human conduct in such circumstances is that no evidence of debt nor any security was taken or mentioned, for the reason that none were intended.

As for Glenn's testimony, he was not cross-examined; but the record shows that appellant reserved the right to cross-examine at a later time, under rule 52 of the rules of the chancery court, but that, pending the preparation of the case for submission, charges involving moral turpitude were preferred against him, and he became a fugitive from justice. Apart from this, his credibility has been seriously impaired by impeaching witnesses. Even those witnesses brought by complainants to sustain his reputation for truth and veracity speak of him in terms which show their lack of confidence in his character. He says, however, that he made no notes or mortgage, because he was not asked to do so.

Contradictions and inconsistencies in the testimony of complainants in respect of other matters, as for example, in detailing the origin and extent of Mrs. Esco's interest in the property in controversy, which we are not disposed to state at greater length, but which have been pointed out by counsel, tend to shake our confidence in their case.

Upon a survey of the entire case we state our opinion that complainants have not been able to lift the bur-

den of proof imposed upon them by the ordinary rule of law in such cases by the face of the memorials of the transaction prepared by the parties to it, and by certain facts which seem to be established beyond peradventure; and hence that their bill should have been dismissed, and appellant's title to the entire property in question confirmed and settled in him. A decree to that effect will be rendered here. A question as to original complainants' liability to cross-complainant for rents collected by the former pending this suit was not determined in the decree below, and remains open. For its disposition the cause will be remanded for further proceedings.

Reversed, rendered in part, and remanded.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.