## LA CUEVA RANCH CO. v. BREWER et al.

Circuit Court of Appeals, Seventh Circuit.
December 17, 1927.

Rehearing Denied February 14, 1928.

No. 3861.

**1. Limitation of actions ⬤⟶127(3)—Amended declaration, clarifying defective charge, did not introduce new cause of action, subjecting it to plea of limitations.**

Where original declaration undertook, though defectively, to charge use and occupation of ranch by alleged occupants under a contract of purchase, amended declaration, clarifying original in such respect, *held* not to have introduced a new cause of action, that would subject it to plea of limitations.

**2. Use and occupation ⬤⟶1—Vendor's right to recover for use and occupation under contract of purchase is controlled by law of state wherein land was situated.**

Question of whether vendor of ranch was entitled to recover for use and occupation pursuant to contract of purchase, which failed of consummation, is controlled by law of state wherein ranch was situated, and which constitutes place of performance of contract.

**3. Use and occupation ⬤⟶1—Vendor under New Mexico law, can maintain action for use and occupation against defaulting purchaser in possession.**

Under the law of New Mexico, vendor of land under contract failing of consummation can maintain an action for use and occupation against purchaser in possession, who failed to carry out contract of purchase, since under such circumstances promise to pay rent is inferred, and relation of landlord and tenant exists.

**4. Use and occupation ⬤⟶1—Purchaser, using and occupying ranch for short period pending delay in conveyances, did not have beneficial use, and was entitled to directed verdict in action for use and occupation, after failure to consummate contract.**

Where some of purchasers of ranch under contract resided on ranch for a short time during delay in making conveyances, and issued orders relative to its operation, but vendors continued their previous occupation, with general direction of operations, such use and occupation by purchasers was not beneficial use and occupation, so as to create liability on failure to consummate contract of purchase, and verdict for purchasers, when sued by vendors, was properly directed.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the La Cueva Ranch Company against Frederick A. Brewer and others. Judgment for defendants, and plaintiff brings error. Affirmed.

William Rothmann, of Chicago, Ill., for plaintiff in error.

Henry Fitts, of Chicago, Ill., for defendants in error.

23 F.(2d)—24

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. Since our prior opinion in this case, reported in 283 F. 963, the plaintiff, who is here plaintiff in error, amended its declaration to include a demand for use and occupation of the New Mexico ranch while defendants were in alleged occupancy of it under a contract of purchase, which they failed to carry out.

[1] The court sustained plaintiff's demurrer to defendants' plea of the statute of limitations to the amended declaration, and we believe properly so. In the first opinion we expressed doubt whether the prior declaration sufficiently charged use and occupation of the ranch. While that doubt still persists, it is plain that that declaration did undertake, however defectively, so to charge, and we are satisfied that the clarifying amended declaration did not, in this respect, introduce a new cause of action.

[2, 3] Respecting the claim for use and occupation of the ranch, defendants contend that such a claim can arise only under the relation of landlord and tenant, and that a purchaser's occupation, pursuant to a contract of purchase which he fails to consummate, does not constitute such relation. McNair v. Schwartz, 16 Ill. 24, seems distinctly so to hold. The third paragraph of section 1, c. 80, Rev. Stat. Ill., giving right of action in assumpsit for rent of real estate against vendee, who occupied it under a contract of purchase which he breaches, does not here apply, for lack of proof of demand in writing and refusal thereafter to surrender possession. There are many authorities supporting, and others controverting, McNair v. Schwartz, but we believe the question is controlled by the law of New Mexico, which is the place of performance of the contract, and the situs of the ranch. The Supreme Court of that state holds that under such circumstances the promise to pay rent is inferred and the relation of landlord and tenant exists, and that an action for use and occupation will lie against a vendee in possession, who fails to carry out his contract of purchase. Moore v. Western Meat Co., 16 N. M. 107, 113 P. 827. And McNair v. Schwartz, supra, holds assumpsit to be the proper form of action for rent, where there is the relation of landlord and tenant.

At the close of the evidence for plaintiff the court granted defendants' motion for an instructed verdict in their favor, and this action, together with the ensuing judgment for defendants, is here assailed. If we pass the

proposition of right of recovery for use and occupation, we meet the question whether the evidence shows that the defendants were in such possession, and, as to the personal property, whether the defendants deprived plaintiff of any of it. The action is not for damages for breach of the contract of purchase, but distinctly for use and occupation of the real estate, and for the value of personal property alleged to have been turned over to defendants under their contract of purchase, and not returned to plaintiff.

The ranch consists of about 25,000 acres, of which about 1,500 acres were under cultivation—900 acres of it being devoted to raising alfalfa hay and 600 acres to grain—and about 20,000 acres were grazing land. There were various buildings on it—the ranch house, occupied by the managers, and such other structures as would be required actively to carry on a large stock ranch. There was a store building on the premises; also a mill. One Deuel and one Loudon, who owned together 85 per cent. of plaintiff's issued capital stock, had for about 15 years lived on the ranch, occupying the ranch house and having general direction of the stock and farming operations, and the running of plaintiff's general store.

[4] Early in 1916 plaintiff made a contract with the individual defendants for sale to them of the ranch at fixed price, and of personal property, to be agreed upon, for a price to be paid as specified in the contract, but possession to be given purchasers before any payment, with provision for making conveyance to a corporation which the individual defendants were to organize. In March defendants Hogan came to the ranch, one or both of them staying there for about two months, in which time, with the consent of plaintiff's representatives, they were giving orders with reference to the running of the ranch, giving their directions to one Knauer, who had lived on the ranch for about 30 years, and had been its operating superintendent for about 26 years. The Hogans went away in May, and did not return, except once or twice for a day. Defendant Starnes came to New Mexico in April, and established himself and his family at Las Vegas, 25 miles from the ranch, remaining there for the summer. He frequently came to the ranch, but did not live there, and also gave orders to Knauer with reference to the running of the ranch.

There was some delay in making the conveyances, but they were made in July to the corporate defendant, which was the nominee and creature of the individual defendants, who had signed the contract. In November the plaintiff brought its action in New Mexico against the corporate defendant alone for cancellation of the conveyances, and Deuel was appointed receiver. Shortly afterwards there was a decree canceling the conveyances to the corporate defendant, and investing plaintiff with whatever interest in the ranch and personal property the corporate defendant had.

Shortly after the Hogans came to the ranch an agreement was made respecting the personal property, whereby over 900 head of cattle, 165 horses, 50 pigs, and about $2,300 worth of hay and grain which were on the ranch—altogether appraised at about $50,000—were to be conveyed under the contract, and were thereafter dealt with by the parties in the same manner as the ranch itself. It appears that during the time the contract was pending there was no substantial change in the physical relation of Deuel and Loudon toward the ranch. They continued to reside at the ranch house, the same employees were retained, and they conducted the business of the store just as they always had—none of the defendants having any semblance or pretense of possession of the store, although it was included in the contract. They continued as always to keep the accounts of the ranch and to pay the employees, although stating that, after the Hogans first came there, they set up an account with the defendants, on whose behalf they made the payments. Knauer, who had been their superintendent during all the time of their occupancy, continued in the management of the stock and farming operations as during all the years before, and in no material respect was there any change, save that Hogan or Starnes from time to time gave orders for doing things there. The mill was not run, and it does not appear there was any occasion for running it.

From the ranch the defendants took nothing, but when in September, their even occasional visits ceased, they appeared to leave the ranch in substantially the same situation as they found it, with Deuel and Loudon in actual possession, and without interruption at any time of the continuous operation of the ranch practically as it had long theretofore been carried on. It does not appear that this qualified possession by the defendants of the ranch was to any material extent beneficial to them or detrimental to plaintiff. Plaintiff received back its same ranch as a going concern, without substantial interruption or impairment of its business, and without withdrawal therefrom by defendants of any of its emoluments, gains or profits. Plaintiff

continued to carry on its store, presumably at a profit; its officers lived, as always, at the ranch house, as though nothing had happened; and its old, trusted superintendent continued to occupy his house in the center of the ranch, and to superintend the business as of yore.

The situation respecting the personal property is quite similar. It is not pretended that a single head of live stock was appropriated by defendants, or missing when, in September, they apparently abandoned the contract. On the contrary, all the personal property, with its increase, remained with plaintiff. The principal business of the ranch was raising live stock, mainly cattle. Very little, if any, of grain or hay raised, was sold, but practically all was fed to the stock, or used on the ranch for seeding; and so practically all the hay and grain, which was the subject of the contract, ultimately came to or remained with plaintiff. Even as to advances made by plaintiff to pay for labor, which, had the contract been carried out, would ultimately have been repaid by defendants, all this likewise was for the direct benefit of the ranch and the live stock thereon, and thus remained with the property.

The continued possession of Deuel and Loudon cannot be reconciled with absolute and beneficial possession by the defendants at one and the same time. It is evident that, as between the parties, the defendants were not to have the unqualified beneficial possession until they had performed their part of the contract. Had this been done, unquestionably the possession of or by Deuel and Loudon would have ceased. But the plaintiff evidently remained in such possession as it did retain, through Deuel and Loudon, for the very purpose of protecting the vendor's interest until the vendees had complied with the contract. The giving of the conveyances, as well as the qualified possession of Starnes and the Hogans, was evidently for the purpose of assisting the defendants to float the contemplated large bond issue on the ranch for a sum much greater than the purchase price, whereby they would have been enabled to fulfill their contract with plaintiff, and was never intended to give defendants such possession as would have authorized them to take unto themselves any actual benefit from the ranch or the personal property in advance of their compliance with the contract, notwithstanding the provision for possession in the contract.

The New Mexico case (Moore v. Western Meat Co., supra), in upholding the right of the vendor to recover for use and occupa-

tion, said it appeared from the testimony "that the use and occupation of the premises by the defendant was beneficial use and occupation." It is plain to us that the alleged use and occupation of these defendants was in no sense beneficial use and occupation, but was wholly without benefit to them, and, under the evidence, took nothing of material value from plaintiff.

For want of disclosure by the evidence of any recoverable loss or damage through whatever of qualified possession of the ranch and personal property defendants had, the direction of a verdict for defendants was justified, and the judgment is affirmed.