## MANHATTAN OIL CO. et al. v. MOSBY.*
### No. 9847.

Circuit Court of Appeals, Eighth Circuit.
Sept. 12, 1934.

*Rehearing denied Oct. 29, 1934.

Henry L. Jost, of Kansas City, Mo. (H. H. Booth, of Kansas City, Mo., and R. H. Hudson, R. E. Cullison, and C. C. Julien, all of Bartlesville, Okl., on the brief), for appellants.

Byron Spencer, of Kansas City, Mo. (H. M. Langworthy, Frank H. Terrell, and Charles B. Turney, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge.

During the spring and summer of 1926, George A. Mosby, the appellee, who will be referred to as plaintiff, was fattening a large number of cattle upon his ranch in Greenwood county, Kan. The appellants, Manhattan Oil Company, Phillips Petroleum Company, and Empire Gas & Fuel Company, were drilling for and producing oil on land adjacent to and east of the Mosby ranch and on a small portion of the ranch itself. The drainage from the lands upon which the wells were located was toward the west branch of the Fall river, which traverses the Mosby ranch and which formed the plaintiff's sole source of water supply for his cattle. Mosby brought suit against the oil companies, claiming that they wrongfully permitted salt water and oil to drain from their locations across his lands and into his stream, thus polluting the water and rendering it unfit for his cattle to drink; and that, as a result of such pollution, his cattle did not fatten, as they otherwise would have done, and he was put to additional expense for feed and water. He asked for damages for the loss of his anticipated profits, and the added expenses to which he was put, because of the pollution, in providing food and water. Issues were joined, and the case was tried. Upon the first trial the lower court directed a verdict in favor of the defendants on the ground of a misjoinder of parties and causes of action, holding that the liability of the defendants was several and not joint. This court reversed [52 F.(2d) 364, 368, 77 A. L. R. 1099], holding that "the evidence disclosed an accrued cause of action, under the law of Kansas, against the defendants jointly, and that such cause of action was maintainable in the federal court in Missouri." It also held that the fact that the Phillips Petroleum Company was a lessee of the plaintiff would not prevent a recovery. The decision amounted to a holding that, upon the record made in the first trial, the defendants were not entitled to a directed verdict for any of the reasons urged by them.

The case has now been retried, and the result of the second trial was a $17,000 verdict for the plaintiff. From the judgment entered thereon the defendants have appealed.

A great many errors are assigned. They relate to the following matters:

(1) The jurisdiction of the court;

(2) The sufficiency of the plaintiff's petition;

(3) The statute of limitations;

(4) The admission of certain evidence introduced by the plaintiff;

(5) The rejection of certain evidence offered by the defendants;

(6) The sufficiency of the evidence to support the verdict;

(7) The right of the plaintiff to recover from the Phillips Petroleum Company, his lessee;

(8) The right of the plaintiff to aggregate his damages against the defendants jointly;

(9) The instructions of the court to the jury;

(10) The validity of the verdict.

1. The defendants insist that this action is for trespass on real property and therefore a local action triable only in Kansas. While the plaintiff alleges that the salt water injured his land for pasturage, he asks for damages only for the injury done to his cattle and for the additional expense which he incurred for feed and water occasioned by the presence of salt in the water of his stream. The cattle were no part of the real estate; they did not run with the land. They were the subject of the injury. While the place and means of injury were local, the subject of the injury was transitory. The cattle were susceptible to injury wherever located. Hence the action was transitory and not local. Gunther v. Dranbauer, 86 Md. 1, 38 A. 33, 34; Mason v. Warner, 31 Mo. 508, 510, 511; Jacobus v. Colgate, 217 N. Y. 235, 111 N. E. 837, 841, Ann. Cas. 1917E, 369; Potomac Milling & Ice Co. v. Baltimore & O. R. Co. (D. C.) 217 F. 665; Mattix v. Swepston, 127 Tenn. 693, 155 S. W. 928. Under the defendants' theory, if one of the plaintiff's children had been poisoned by drinking the water of the stream, the action for such injury would be one for damage to the real estate, a manifest absurdity.

2. The Kansas Revised Statutes 1923, 55—121, provide: "It shall be unlawful for any person, having possession or control of any well drilled, or being drilled for oil or gas, either as contractor, owner, lessee, agent or manager, or in any other capacity, to permit salt water, oil or refuse from any such well, to escape upon the ground and flow

away from the immediate vicinity of such well, and it shall be the duty of any such person to keep such salt water, oil or refuse safely confined in tanks, pipe lines or ponds, so as to prevent the escape thereof: Provided, however, That this act shall not be construed to apply to the escape of salt water, oil or refuse because of circumstances beyond the control of the person in the possession or control of such well and under circumstances which could not have been reasonably anticipated and guarded against." The defendants contend that, since the petition fails to negative the effect of the proviso, namely, that the escape of the salt water and oil was due to circumstances beyond the control of the defendants, it fails to state a cause of action.

The purpose of the petition was to advise the defendants upon what grounds the plaintiff claimed their liability to him rested, so that they might intelligently defend his suit. That they were fully advised at all times, there can be no doubt. Their answers and their evidence show that they were in no way misled or taken by surprise. It is perhaps not important whether the plaintiff alleged that the escape of salt water was due to circumstances within the defendants' control, or whether they alleged as a matter of defense that it was due to circumstances beyond their control. However, it is plain that the statute laid down a general rule that salt water was not to be permitted to escape. The proviso merely created an exception to the rule. The plaintiff alleged a violation of the duty imposed by the statute. It was not incumbent upon him to allege that the defendants did not come within its exception. That was clearly a matter of defense. 49 C. J. 153, § 169; United States v. Cook, 17 Wall. 168, 175, 21 L. Ed. 538; Grand Trunk Ry. Co. v. United States (C. C. A. 7) 229 F. 116, 119; Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.(2d) 190, 200; City of Kansas City v. Garnier, 57 Kan. 412, 46 P. 707, 708; State v. Buis, 83 Kan. 273, 111 P. 189, 190; State v. Belle Springs Creamery Co., 83 Kan. 389, 111 P. 474, 475, L. R. A. 1915D, 515; King v. Wilson, 95 Kan. 390, 148 P. 752, 753.

■ 3. Under the Revised Statutes of Kansas 1923, 60—306, and Revised Statutes of Missouri 1929, § 869 (Mo. St. Ann. § 869, p. 1158), the plaintiff was limited to two years for the bringing of his action. He discovered his cause of action about June 25, 1926. He brought suit about April 15, 1927. The second amended petition was filed April 16, 1929. The defendants contend that no cause of action was stated until the filing of the second amended petition, because up to that time there was no charge that any negligent or wrongful act of the defendants caused the injuries complained of. They also contend that if a cause of action was stated by that petition, it took the addition of the word "concurrently," on June 1, 1929, to make it a joint cause of action. If their contention that the statute of limitations had not been tolled prior to April 16, 1929, is correct, the plaintiff's right to maintain his action had expired when he filed his second amended petition. The original petition alleged that the defendants permitted salt water and crude oil to escape and pollute the plaintiff's stream, and that his loss and damage were caused thereby. The plaintiff did not therein allege that the conduct of the defendants was wrongful or that they acted concurrently, nor did he allege any duty imposed by a statute of Kansas. The defendants removed the case to the federal court. On December 12, 1927, the plaintiff filed his first amended petition. In it he added an allegation that he first discovered the pollution of his stream on or about June 25, 1926. He amended his claim with respect to the amount of his damages. He did not expressly assert that the acts of the defendants were wrongful or concurrent. On April 16, 1929, he first alleged that the conduct of the defendants was wrongful, and on June 1, 1929, he first alleged that they acted concurrently.

Manifestly, if a cause of action is actually barred by the statute of limitations it cannot be resurrected by inserting it, through amendment, into a petition which states an entirely different cause of action. It is also true that if the facts upon which an asserted liability rests are so inadequately stated in a petition that the defendants cannot tell upon what grounds or upon what state of facts their liability rests, it will not toll the statute. Defects in a pleading which states the essential facts and is sufficient notice of the plaintiff's claim and the factual basis of it, even though it may be subject to demurrer, will toll the statute. "Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." New York Central & Hudson River R. Co. v. Kinney, 260 U. S. 340, 346, 43 S. Ct. 122, 123, 67 L. Ed. 294. See, also, Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U. S. 570, 575, 576, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134;

Friederichsen v. Renard, Executor, etc., et al., 247 U. S. 207, 210, 211, 38 S. Ct. 450, 62 L. Ed. 1075; United States v. Memphis Cotton Oil Co., 288 U. S. 62, 67, 53 S. Ct. 278, 77 L. Ed. 619; Wright v. Hardesty et al., 137 Kan. 158, 19 P.(2d) 441; Emporia National Bank v. Layfeth, 63 Kan. 17, 64 P. 973; St. Louis & San Francisco Ry. Co. v. Ludlum, 63 Kan. 719, 66 P. 1045; Missouri, Kansas & Texas Ry. Co. v. Bagley, 65 Kan. 188, 198, 69 P. 189, 3 L. R. A. (N. S.) 259; Great Southern Lumber Co. v. Williams (C. C. A. 5) 17 F.(2d) 468, 470; Hovland v. Farmers' State Bank of Christine, N. D., et al. (C. C. A. 8) 10 F.(2d) 478, 482; La Cueva Ranch Co. v. Brewer (C. C. A. 7) 23 F.(2d) 369; Clinchfield R. Co. v. Dunn (C. C. A. 6) 40 F.(2d) 586, 587, 74 A. L. R. 1276; Whalen v. Gordon (C. C. A. 8) 95 F. 305, 308, in which we said: "An amendment to a petition which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, not before introduced or made in the pending suit, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed."

We are satisfied that the amendments which the plaintiff made to his original petition related back to the commencement of his action.

■ 4. The defendants argue that the testimony introduced by the plaintiff to the effect that a man by the name of Chase, working for the Manhattan Oil Company, received complaints of the pollution of the plaintiff's stream, was inadmissible because there was no competent evidence that Chase was an agent of that company. If the admission of this testimony was error, it was entirely unprejudicial, because it was unnecessary for the plaintiff to prove that notice of pollution was given to the defendants, and hence it is utterly immaterial who Chase was or what complaint was made to him.

As indicating that no notice to the defendants was required, see Andrews v. Western Asphalt Paving Corporation, 193 Iowa, 1047, 188 N. W. 900, 901, 902; Exley v. Southern Cotton Oil Co. (C. C. Ga.) 151 F. 101, 105;

King-Crowther Corp. v. Ashcraft, 60 Ind. App. 412, 110 N. E. 998; Missouri River Packet Co. v. Hannibal & St. Joseph R. Co. (C. C. Mo.) 2 F. 285, 293; Roberts et al. v. Georgia Ry. & Power Co., 24 Ga. App. 664, 101 S. E. 813, 814; Blackstock v. Southern Ry. Co., 120 Ga. 414, 47 S. E. 902, 903; Watson et al. v. Colusa-Parrot Mining & Smelting Co., 31 Mont. 513, 79 P. 14, 17, 18; Finkelstein v. Huner, 77 App. Div. 424, 79 N. Y. S. 334, 336. These cases relate to common-law nuisances, but the same rule we think is applicable in this case.

■ It is asserted that the testimony of the plaintiff's ranch manager that the dams built on the plaintiff's land by the Phillips Petroleum Company, his lessee, were constructed by placing the embankment of the pool on top of the blue-stem grass without plowing it under should not have been admitted because it was a conclusion and not a statement of fact. The witness had testified that "the grass was lying there when the dam was built onto the sod." He also said he "saw the teams working there digging this dirt out and piling it up making the dam." He was asked to state what he actually observed. The record fails to show that he testified to anything outside of his own observation.

Furthermore, if it was the absolute duty of the defendants to prevent the escape of salt water, it was unimportant how they built their dam.

■ There was testimony that certain ponds east of the plaintiff's ranch would not hold water. This had been objected to on the ground that the location of the ponds was not defined. There was no merit in the objection. The ponds referred to were obviously the ponds of the defendants, and, after answering the question, the witness explained what ponds he referred to.

■ The expert testimony introduced by the plaintiff as to the effects of salt water upon cattle was objected to. This testimony was given by a veterinary. We know of no theory upon which such testimony could have been excluded. Why testimony of a doctor as to the effect of polluted water upon a human being would be admissible, and that of a veterinary as to the effect of such water on a cow would be inadmissible, is not easy of comprehension. We think the subject was clearly one for expert testimony. See Cooke v. Kansas City, Fort Scott & Memphis R. Co., 57 Mo. App. 471, 479; Todd v. Prairie Pipe Line Co., 108 Kan. 485, 486, 196 P. 623; Grayson v. Lynch, 163 U. S. 468, 480, 481, 16 S. Ct. 1064, 41 L. Ed. 230; Cropper v. Titani-

um Pigment Co., Inc. (C. C. A. 8) 47 F.(2d) 1038, 1043, 78 A. L. R. 737; Illinois Power & Light Corporation v. Hurley et al. (C. C. A. 8) 49 F.(2d) 681, 685; Laughlin v. Christensen (C. C. A. 8) 1 F.(2d) 215, 217; United States Smelting Co. v. Parry (C. C. A. 8) 166 F. 407, 410, 411.

The defendants also complain about the plaintiff's opinion evidence as to the anticipated and expected increase in weight of his cattle, on the ground that it consisted of opinions and conclusions. What else it could have consisted of, it is difficult to determine. It may be a matter of common knowledge that cattle take on weight when properly fed and watered, and that they lose weight if starved or famished. How much weight they should take on under normal conditions on the plaintiff's ranch in Kansas was certainly a matter which called for some expert evidence on the part of those familiar with the subject. See, in addition to the cases already cited next above, Gilbert v. Kennedy, 22 Mich. 117; McElwain v. Union Pacific R. Co., 101 Neb. 484, 163 N. W. 845, 846, 1 A. L. R. 533; International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 551, 552, 49 L. R. A. (N. S.) 415.

Lampe, a rancher and commission man of many years' experience, was permitted to interpret, over the defendants' objections, market quotations in "The Daily Drovers' Telegram," a market publication showing the prices of cattle on certain dates, and to apply them to cattle comparable to plaintiff's. The defendants contend that this was error. Without some one to elucidate these market quotations and to explain their application to the situation with which the jury were confronted, the evidence would have been largely meaningless. If the witness misinterpreted the quotations or made an improper application of them, the defendants were in a position to show the truth. The modern tendency of courts is to permit the introduction of any competent evidence which will assist the jury in arriving at the truth, together with such opinion evidence as will or may be helpful to the jurors in making other evidence in the case understandable. If the jurors know as much or more than the expert witnesses, no harm is done in any event. If they know less than the expert witnesses, the opinions of the experts may be of assistance in arriving at a correct conclusion. We think that any one who has had experience in the trial of lawsuits knows that jurors are not misled by the erroneous opinions of experts relating to matters of common knowledge, but that they may be misled by such opinions with respect to

some matter entirely outside of their range of knowledge and experience, although relating to a subject with respect to which opinion evidence is clearly admissible.

"Where a written instrument contains words or expressions, which are of a technical nature, being connected with some art, science, or occupation, and unintelligible to the common reader, yet susceptible of a definite interpretation by experts, parol evidence is admitted for the purpose of explaining the language used and thus effectuating the intention of the parties through the medium of their own language." 22 C. J. 1203, § 1602.

The defendants complain that certain statements made by the trial judge in sustaining objections to the introduction of evidence were prejudicial to them. It is sufficient answer that no exception was taken to the remarks. Hence the question is not before us. Drumm-Flato Commission Co. v. Edmisson, 208 U. S. 534, 540, 28 S. Ct. 367, 52 L. Ed. 606; Lane v. Leiter (C. C. A. 7) 237 F. 149, 158; Panama R. Co. v. Strobel (C. C. A. 5) 282 F. 52, 53. But a complete answer to the question will be found in the case of Goldstein v. United States (C. C. A. 8) 63 F.(2d) 609, 612, 614.

5. The court excluded the testimony offered by defendants that plaintiff received rents and royalties from the Phillips Petroleum Company for an oil lease. Our previous decision in this case is sufficient authority for that ruling.

The court also excluded testimony of an investigator for the Empire Gas & Fuel Company that cows belonging to a neighbor of Mosby, and pastured half a mile south of Mosby's main pasture, were in good condition in 1927, although they drank out of the same stream from which plaintiff's cattle drank in 1926. The plaintiff had testified that the water on his ranch was about the same both years. There was testimony, however, that there were springs all along the creek bed and other testimony to the effect that the pollution was not so great at the point where the stream left the ranch. Without some showing that the condition of the water on the neighbor's ranch in the summer of 1927 was substantially the same as that of the water on Mosby's ranch in the summer of 1926, we are satisfied that the court did not err in excluding this testimony. In Union Electric Light & Power Co. v. Snyder Estate Co. et al., 65 F.(2d) 297, 310, we said: "Unless substantially the same conditions are shown to exist, the evidence of similar occurrences should not be admitted." See, also, Sharples

Separator Co. v. Skinner (C. C. A. 9) 251 F. 25, 28; Lake Superior Loader Co. v. Huttig Lead & Zinc Co., 305 Mo. 130, 264 S. W. 396.

6. In view of our former decision in this case, we think it is unnecessary to prolong this opinion in order to set forth in detail the evidence upon which the plaintiff relied. If anything, it was more favorable to him than upon the former trial. It showed pollution of his stream by salt water escaping from the defendants' ponds; that the water was unfit for cattle to drink; that his cattle did not fatten as they normally would have done; that this was attributable to the salt water in the stream; that by reason of the pollution he incurred additional expense for feed and water; that had the cattle gained as they should, they would have sold for more than they actually sold for. We think there was abundant evidence to justify the submission of the issues of fact to the jury.

7. In our former opinion, as has already been pointed out, we held that the fact that the Phillips Petroleum Company had a lease from the plaintiff to drill for oil upon his land, and that he accepted rents and royalties under such lease, would not prevent his obtaining a judgment in his action against that company; and the lower court was obliged to follow our ruling in that regard.

The defendants contend, however, that the record on this appeal shows that the plaintiff acquiesced in the pollution of the stream by the Phillips Company. This is based on the proposition that he remained silent. We think there is no merit in this contention. See 46 C. J. 805, § 446; Aldrich v. Wetmore, 56 Minn. 20, 23, 57 N. W. 221; Andrews v. Western Asphalt Paving Corp., 193 Iowa, 1047, 188 N. W. 900, 901, 902; Carroll Springs Distilling Co. v. Schnepfe, 111 Md. 420, 74 A. 828. The cases upon which the defendants rely, we think, are readily distinguishable.

8. We see no merit in the contention that the plaintiff was required to segregate his damages against each defendant. We think that this question was also settled by our former decision in this case. An almost identical case is Commercial Drilling Co. v. McKee et al., 162 Okl. 204, 19 P.(2d) 338. There the plaintiff was permitted to recover against his lessee and other oil companies without making any segregation of damages.

9. The defendants complain of the measure of damages which the court instructed the jury should be applied, which was the difference between what the plaintiff would have obtained for his cattle had his stream not been polluted and what he actually received for them, less the cost of marketing.

In Phillips v. Empire Oil & Refining Co., 131 Kan. 516, 292 P. 782, 783, the court said: "There is and can be no controversy of the proposition that any one sustaining substantial injury to his live stock by the pollution of a stream flowing through his pasture from which the live stock drank the polluted water, may maintain an action against the party causing the pollution and recover any actual damages thereby sustained."

That the court below applied the correct measure of damages we think is self-evident and is sustained by the following authorities: Benjamin v. Gulf, C. & S. F. Ry. Co., 49 Tex. Civ. App. 473, 108 S. W. 408, 411; Johnston v. City of Galva, 316 Ill. 598, 147 N. E. 453, 38 A. L. R. 1384; Midland Oil Co. v. Ball, 115 Okl. 229, 242 P. 161; Commercial Drilling Co. v. McKee et al., supra, 162 Okl. 204, 19 P.(2d) 338. See, also, Tidal Oil Co. v. Pease et al., 153 Okl. 137, 5 P.(2d) 389, and Norton Coal Mining Co. v. Wilkie et al., 224 Ky. 192, 5 S.W.(2d) 1058, 1060.

In Sussex Land & Live Stock Co. v. Midwest Refining Co. (C. C. A. 8) 294 F. 597, 608, which is relied on by the defendants, this court held that the annual rental value of grazing lands, computed in the light of their value to the plaintiff, was the proper measure of damages for pollution of a stream, in view of the lack of evidence to show other damages. It was held that estimated profits lost on stock that could not be handled because of the pollution would "permit recovery for possible instead of probable profits." In that case an attempt was made to recover for damages to hypothetical cattle. In this case damages are sought for injury occasioned to cattle which were actually pastured and put on the land before discovery of the polluted condition of the water.

What the measure of damages would have been had plaintiff sued for the diminution in the value of his ranch caused by pollution, rather than for the injury to his cattle, we do not feel called upon to decide. The land was his, the cattle were his, and this lawsuit is his lawsuit.

The defendants also contend that the court should not, by its instructions, have permitted the jury to award damages for the loss of anticipated profits on the plaintiff's cattle, because they were too speculative, remote, and uncertain to afford a proper basis for a verdict. If the plaintiff's evidence is to be believed, there was nothing particularly spec-

ulative or uncertain about his loss of profits. He had the cattle; he had the grass for them to eat and the water for them to drink; if they had gained, as his evidence showed that they would have gained had his stream not been polluted by the defendants, the cattle would have sold for a certain market price, whereas, because of the pollution of his stream, they were prevented from making a normal gain, and therefore brought a much lower price.

In Story Parchment Co. v. Paterson Parchment Paper Co. et al., 282 U. S. 555, 563, 51 S. Ct. 248, 250, 75 L. Ed. 544, the court said: "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." See, also, Eastman Kodak Company of New York v. Southern Photo Materials Co., 273 U. S. 359, 378, 47 S. Ct. 400, 71 L. Ed. 684; American Smelting & Refining Co. v. Riverside Dairy & Stock Farm (C. C. A. 8) 236 F. 510, 515, in which we held that recovery of damages for injury to crops by smelter smoke would not be denied because the amount of injury could not be determined with certainty. United States Smelting Co. v. Sisam (C. C. A. 8) 191 F. 293, 295–300, 37 L. R. A. (N. S.) 976; Malone v. Hastings et al. (C. C. A. 5) 193 F. 1, 4.

The defendants contend that the statute of Kansas did not impose an absolute duty upon them with respect to preventing the escape of salt water, but only the duty to exercise ordinary care, and that the court erred in failing to so charge the jury. We are unable to follow the defendants' reasoning. The language of the statute is plain. It makes the defendants insurers against the escape of salt water from their wells, except where such escape is due to circumstances beyond their control and which could not reasonably have been anticipated or guarded against. The court's charge in this regard was clear and correct.

10. After the trial the defendants made a motion for a new trial, partly on the ground that the verdict was a quotient verdict. They attempted to impeach it by the affidavits of the jurors. The court properly held that that could not be done. McDonald and U. S. F. & G. Co. v. Pless, 238 U. S. 264, 267–269, 35 S. Ct. 783, 59 L. Ed. 1300; Ramsey v. United States (C. C. A. 6) 27 F.(2d) 502, 504. The reception of the affidavits of jurors by the court could not change the rule that jurors may not impeach their verdict.

Our conclusion is that the case was fairly and correctly tried and submitted. Whether the jury reached the correct conclusion upon the evidence and the law is not for us to decide.

The judgment is affirmed.

